[No. 29723. Department Two. November 8, 1945.]

LABOR HALL ASSOCIATION, INC., *Respondent,* v. FLORENCE DANIELSEN, *Appellant.*[1]

[1] Reported in 163 P. (2d) 167.

76

*Royce, Hurley & Roberts*, for appellant.

*Garvin & Frissell*, for respondent.

JEFFERS, J.—This is an appeal by Florence Danielsen, defendant, from a judgment made and entered on May 14, 1945, in an unlawful detainer action instituted by Labor Hall Association, Inc. The judgment from which the appeal is taken was in accordance with findings of fact and conclusions of law made and entered by the court, and in part provides:

"I. That the plaintiff have immediate restitution of the

following described premises: (Then follows a description of the premises.)

"II. That the plaintiff is entitled to rent in the sum of ten per cent of the gross receipts for the period that the defendant remained in said premises subsequent to the service of the notice to vacate.

"III. That plaintiff is entitled to costs in the sum of $................

"IV. That defendant's cross-complaint be dismissed with prejudice."

Defendant made a motion for new trial, which was denied on June 16, 1945, and this appeal followed.

Error is assigned on the denial of appellant's motion for dismissal, which motion was based upon the contention that respondent had made an election of remedies. Error is also assigned upon the making of the latter part of finding of fact No. 2, which provides:

"That on or about January 5, 1944, defendant entered into possession of the restaurant premises located on said property in accordance with a written, unacknowledged agreement; *that thereby defendant became a tenant of plaintiff for an indefinite time on a month to month basis, with a rental of 10% of gross receipts payable Monday of each week reserved.*" (Italics ours.)

It is contended the court erred in making finding of fact No. 6, which states:

"That plaintiff is not estopped in claiming said lease was or is invalid or ineffectual and said unacknowledged lease was in fact invalid for a period of more than a year."

It is also claimed the court erred in making and entering conclusions of law Nos. 1 and 2.

Conclusion No. 1 states that respondent is entitled to restitution of the premises and to damages in the sum of ten per cent of the gross receipts for the period that appellant remained in the premises subsequent to the service of the notice to quit.

Conclusion No. 2 merely provides that respondent is entitled to costs.

Error is also assigned upon the entry of judgment in favor of respondent, and in denying appellant's motion for a new trial.

The lease involved in this action was actually signed by the parties sometime in February, 1944, and provides that it was made and entered into as of January 5, 1944, on which date appellant actually took possession of the premises. The lease contains, among others, the following provision:

"The Lessor (Labor Hall Association) does hereby lease unto the Lessee (Florence Danielsen) that certain storeroom which is now occupied by the Labor Hall Cafe . . . for a term of one (1) year commencing the 5th day of January, 1944 and ending the 4th day of January, 1945."

The lease further provides that lessee agrees to conduct in the storeroom at all times a restaurant, and to operate the same according to the ordinances of the city of Spokane and in a good and workmanlike manner. Lessee also agreed to keep a true and accurate account of all moneys received by or through the operation of the restaurant, and to pay to lessor as rent ten per cent of the gross receipts. It was further agreed that a settlement should be made on Monday of each week during the life of the lease for the receipts for the previous week. The lease also contains the following provision:

"The Lessor agrees that it will, on or before the expiration of this present lease, at the request and expense of the said Lessee, her heirs or assigns, grant and execute to her a new lease of the premises hereby demised, with their appurtenances, for the further term of one (1) year, to commence from the expiration of the term hereby granted, at the same rental and payable in like manner and subject to like covenants and agreements (excepting the covenant for further renewal) as are contained in these presents. Provided, however, said Lessee shall give not less than thirty (30) days notice in writing to said Lessor of her intention or desire for such a renewal."

While the lease was signed by the parties hereto, it was not acknowledged by either.

Appellant divides her argument into four parts: First, she contends that respondent made a conclusive election of remedies; second, that the lease did not need to be acknowledged; third, that respondent waived acknowledg-

ment; and fourth, that respondent is estopped to deny the validity of the lease by the equitable doctrine of part performance. On the other hand, respondent contends it never made an election of remedies; that it has been its position at all times that the lease created nothing more than a month to month tenancy which could be terminated at any time by giving the twenty days notice provided by Rem. Rev. Stat., § 812; that it never waived acknowledgment; and that there are no facts shown upon which an estoppel could be based.

We shall discuss appellant's contentions in the order above stated, referring to the record and testimony material to the particular assignment of error.

On November 28, 1944, a twenty-day notice of the termination of appellant's tenancy on December 25, 1944, was personally served on appellant in accordance with subd. (2) of § 812, which will hereinafter be set out.

Appellant having failed to vacate the premises on December 25th, respondent, on January 10, 1945, filed the original summons and complaint in this action. The action was undoubtedly an unlawful detainer action. The summons was in the form prescribed by Rem. Rev. Stat., § 818 [P. P. C. § 55-17], and specifically stated:

"You are further notified that this is an action of unlawful detainer, and that the relief sought in this action is to recover possession of the premises hereinafter described, for judgment for twice the amount of rent due and of the damages that have been and will be occasioned to the plaintiff by and during your unlawful detention of the said premises [the premises are then described]."

The original complaint alleged ownership of the leased premises in respondent, that on or about January 5, 1944, respondent and appellant entered into a written lease for the possession of the restaurant premises, a copy of the agreement being attached to the complaint, marked exhibit A and by reference made a part thereof; that appellant took possession under the terms of the agreement. In paragraphs 3 and 4, it is alleged that appellant breached the covenants and terms of the agreement in certain partic-

ulars, setting them out. In paragraph 5, it is alleged that on November 28, 1944, the notice to quit hereinbefore referred to was served on appellant, a copy of the notice being attached to and made a part of the complaint. In paragraph 6, it is alleged that several days have elapsed since December 25, 1944, but appellant has refused to surrender possession of the premises. Respondent then prayed for judgment against appellant, first, for restitution of the premises; second, for damages for the unlawful detention of the premises since December 25, 1944; third, for double the amount of the damages; and fourth, for such other and further relief as to the court might seem equitable.

Appellant interposed a demurrer to the complaint on the ground that it did not state facts sufficient to constitute a cause of action. The demurrer was sustained on January 13, 1945, by an order which merely states: "That said demurrer be and the same is hereby sustained."

On January 25, 1945, respondent filed an amended complaint, which alleges ownership of the leased premises in respondent, and in paragraph 2, that on or about January 5, 1944, appellant entered into possession of the premises in accordance with a written, unacknowledged agreement; that thereby appellant became a tenant of respondent for an indefinite time on a month to month basis, with a rental of ten per cent of gross receipts payable Monday of each week reserved; that a copy of such written agreement is attached to the amended complaint, marked exhibit A, and by reference made a part thereof. In paragraph 3, it is alleged that the twenty-day notice hereinbefore referred to was served on appellant on November 28, 1944. In paragraph 4, it is alleged that twenty days have elapsed since the service of such notice, and several days have elapsed since December 25, 1944, but appellant refuses to surrender possession of the premises. The prayer is the same as in the original complaint.

Appellant interposed a general demurrer to the amended complaint on the ground that it did not state facts sufficient to constitute a cause of action. This demurrer was

overruled on February 15, 1945, by an order merely stating that "said demurrer is hereby overruled."

On February 17, 1945, appellant filed an answer and cross-complaint to the amended complaint. By this answer, appellant admits that on or about January 5, 1944, she entered into possession of the premises under the written lease attached to the amended complaint; admits receiving a copy of the twenty-day notice attached to the amended complaint; and denies the other allegations of the complaint. In her cross-complaint, facts are alleged because of which appellant contends that respondent is estopped from claiming that the lease was or is invalid or ineffectual.

The cause came on for trial before the court on April 16, 1945. After respondent had sworn its first witness, counsel for appellant objected to the introduction of any evidence under the amended complaint and moved that the same be dismissed, for the reason that, by the filing of its original complaint, respondent made a definite and conclusive election which is in contradiction to the allegations and theory of the amended complaint; and that respondent was absolutely and conclusively bound by the election therein made. The court, after argument, denied appellant's motion.

In support of her first assignment of error, appellant argues that in the first complaint respondent expressly *affirmed* the written agreement, alleged breach of its covenants by appellant, and prayed for damages, while in its amended complaint respondent attempted to disaffirm the agreement, denying its obligations, and asking for *rescission.*

It may be stated that as a general rule where one has available to him the choice of affirming a contract and suing for damages for an alleged breach thereof, or disaffirming the contract and bringing his action for rescission, the two remedies are inconsistent, and that a selection of one and proceeding thereunder is a bar to resorting to the other remedy.

Let us look to the unlawful detainer statutes and see whether or not, in view of those statutes, the original com-

plaint filed by respondent constituted an absolute election of remedies, thereby barring it from filing and proceeding under the amended complaint.

Rem. Rev. Stat., § 812 [P. P. C. § 55-5], in so far as material, provides:

"A tenant of real property for a term less than life is guilty of unlawful detainer either,— . . .

"(2) When he having leased property for an indefinite time, with monthly or other periodic rent reserved continues in possession thereof, in person or by subtenant, after the end of any such month or period, in cases where the landlord, more than twenty days prior to the end of such month or period, shall have served notice (in manner in this act provided), requiring him to quit the premises at the expiration of such month or period. . . .

"(4) When he continues in possession in person or by subtenant after a neglect or failure to keep or perform any other condition or covenant [this payment of rent] of the lease or agreement under which the property is held, including any covenant not to assign or sublet, than one for the payment of rent, and after notice in writing requiring . . . in the alternative the performance of such condition or covenant or the surrender of the property, served (in the manner provided in this act) upon him, and if there be a subtenant in actual possession of the premises, also upon such subtenant, shall remain uncomplied with for ten days after service thereof."

It was undoubtedly the theory of the court sustaining the demurrer to the original complaint that respondent was attempting to proceed under subd. (4) of § 812, and that being so, that the complaint did not state a cause of action entitling respondent to possession of the premises, because it was alleged the notice given was the one provided in subd. (2) of § 812, instead of the notice required by subd. (4).

■■ However, the unlawful detainer statutes seem to present a different situation, in so far as the remedy afforded one who is attempting to proceed under such statutes is concerned, from the remedies available to one who elects to affirm a contract and sue for damages, or disaffirm the contract and sue for rescission, in this, that

whether one attempts to proceed under subd. (2) or subd. (4) of § 812, *supra,* if he prevails, he is entitled to a forfeiture of the lease and restitution of the premises.

We quote from Rem. Rev. Stat., § 827 [P. P. C. § 55-35]:

"If upon the trial the verdict of the jury, or if the case be tried without a jury the finding of the court, be in favor of the plaintiff and against the defendant, judgment *shall be entered* for the restitution of the premises; and if the proceeding be for unlawful detainer after neglect or failure to perform any condition or covenant of a lease or agreement under which the property is held, or after default in the payment of rent, the *judgment shall also declare the forfeiture of the lease, agreement, or tenancy.* The jury, or the court if the proceedings be tried without a jury, shall also assess the damages occasioned to the plaintiff by any forcible entry, or by any forcible or unlawful detainer, alleged in the complaint and proved on the trial, and if the alleged unlawful detainer be after default in the payment of rent, find the amount of any rent due, and the judgment shall be rendered against the defendant guilty of the forcible entry, forcible detainer, or unlawful detainer for twice the amount of damages thus assessed and of the rent, if any, found due. . . ." (Italics ours.)

It is apparent, we think, that the basis of appellant's contention that by filing the original complaint respondent proceeded upon the theory of affirming the lease and suing for damages is not strictly true, in the sense contended for by appellant, as the complaint prays for restitution of the premises, and had respondent given the notice provided for in subd. (4) of § 812, and prevailed in the action, the court, as provided in § 827, *supra,* "shall . . . declare the forfeiture of the lease, agreement, or tenancy."

It thus appears that whether respondent had proceeded under subd. (2) or (4) of § 812, *supra,* he was entitled to a forfeiture of the lease and possession of the premises, if he prevailed.

If it can be said that one is afforded two remedies by the different subsections of § 812, *supra,* then in our opinion they are not so inconsistent that the filing of a complaint under one section would constitute an absolute bar to the filing of a complaint under the other section,

unless and until the party had prosecuted his action to judgment on one complaint or the other.

We are in accord with the decisions in *Pickle v. Anderson,* 62 Wash. 552, 114 Pac. 177; *Holt Mfg. Co. v. Strachan,* 77 Wash. 380, 137 Pac. 1006; *Behneman v. Schoemer,* 141 Wash. 560, 252 Pac. 133; and *Batcheller, Inc. v. Welden Const. Co.,* 9 Wn. (2d) 392, 115 P. (2d) 696. The general rule is stated in the case last cited, as follows:

"The doctrine of election of remedies is applicable only where there are available to the litigant at the time of the election, two or more coexistent remedies, which are repugnant and inconsistent. This rule is upon the theory that, of several inconsistent remedies, the pursuit of one necessarily involves or implies the negation of the others. The rule does not apply. *where the remedies are cumulative merely.* 18 Am. Jur. 134, § 11." (Italics ours.)

We desire also to call attention to 18 Am. Jur. 136, § 13, wherein it is stated:

"The doctrine of election of remedies being predicated upon the existence of coexisting and inconsistent remedies, it follows as a necessary corollary that not every election of remedies is irrevocable, for two or more remedies are often given to redress the same wrong and are, therefore, concurrent. It is well settled that the rule of conclusive election of remedies does not apply where the available remedies are cumulative and consistent. It is permissible to follow these remedies or *reliefs* independently, in some cases, to judgment, although only one satisfaction can be had." (Italics ours.)

In the instant case, both complaints were based upon the unlawful detainer statutes; the principal relief asked for in both complaints was the restitution of the property. We are of the opinion the two methods by which this relief could be obtained are not inconsistent, and therefore respondent, by filing the original complaint, did not make a conclusive election.

The court therefore did not err in refusing to dismiss the amended complaint.

It is next contended by appellant that the lease here in question did not need to be acknowledged.

It is argued by appellant that the written instrument here in question contains *two agreements,* neither of which, under the statute, needs to be acknowledged. One is a lease for one year; the other is a provision for a new lease for one year. Each of these, says appellant, is perfectly legal and binding, even if not acknowledged.

Appellant further states in her brief that it should be noticed that the agreement here differs essentially from a lease for one year with the provision for an *extension* for a subsequent year. There is danger, states appellant, of one being misled by the language of some cases which are based upon *extension* provisions. Appellant further states that the courts, including our own, have carefully preserved the fundamental distinction between *extensions* and *options for a new lease*; that this court had the difference clearly in mind when it said, in *Murray v. Odman,* 1 Wn. (2d) 481, 486, 96 P. (2d) 489:

"It is the generally accepted rule that a covenant for the extension of the term of a lease, at the option of the lessee, operates, upon the exercise of the privilege, *as a present demise for the full term to which it may be extended,* and not as a demise merely for the shorter period with the privilege of a new lease for the extended term. [Citing cases.]" (Italics ours.)

We are entirely in accord with the above statement, but it should be kept in mind that the statement was made in a case where, in so far as the opinion shows, the lease under consideration was acknowledged. Neither does it appear from the opinion that the question was raised as to the difference, if any, between the effect of a covenant to *extend* the lease and one to *renew* the lease, as the provision in the lease in the cited case states:

" 'In the event that the landlord is the owner of this property at the end of this present five (5) year term, and does not desire to sell this property, then the tenants *have the right to extend this lease* upon its present term with the exception that the rental for the two year extended term shall be at such reasonable monthly rental as the parties hereto shall mutually agree upon.' " (Italics ours.)

We quote further from the cited case:

"Appellants do not now dispute respondents' right to have the term of the lease extended. The only question here involved *is the matter of the reasonable rental to be paid by respondents during the extension period.*" (Italics ours.)

It is apparent, we think, that the cited case is not applicable to the situation presented in the instant case.

Before proceeding further, we desire to call attention to Rem. Rev. Stat., § 10618 [P. P. C. § 719-1], which provides:

"Tenancies from year to year are hereby abolished, except when the same are created by express written contract. Leases may be in writing or print, or partly in writing and partly in print, and shall be legal and valid for any term or period not exceeding one year, without acknowledgment, witnesses, or seals."

This statute has been construed by this court under other code numbers many times, as it has been on our statute books for many years. Many of these cases deal with the effect of an unacknowledged lease for a period longer than one year, but which contains no covenant or agreement for either an extension or renewal of the original term. Others deal with a situation which it is contended estops either the lessor or lessee from raising the question of the failure to have the lease acknowledged. We have found only one case decided by this court where almost the identical contention was made as is made by appellant in the instant case, and where this court, in our opinion, answered such contention. We refer to the case of *Anderson v. Frye & Bruhn,* 69 Wash. 89, 124 Pac. 499, which we shall later discuss. But before so doing, we think it might be well to show the trend of the decisions of this court relative to unacknowledged leases generally, and where the theory that an unacknowledged lease for more than a year creates only a tenancy from month to month or period to period, originated.

In the early case of *Richards v. Redelsheimer,* 36 Wash. 325, 78 Pac. 934, we went quite exhaustively into the effect of, and the tenancy created by, an oral lease of real property or an oral agreement to execute a lease. We need

not go into a discussion of the cited case, other than to say that this court held that an oral lease of real property, if good at all, must fall under Bal. Code, § 4569, and be construed to be a lease from month to month, and then only where the tenant has been put into possession. The above section of Bal. Code is the same as Rem. Rev. Stat., § 10619 [P. P. C. § 719-3], which provides:

"When premises are rented for an indefinite time, with monthly or other periodic rent reserved, such tenancy shall be construed to be a tenancy from month to month, or from period to period on which rent is payable, and shall be terminated by written notice of thirty days or more, preceding the end of any of said months or periods, given by either party to the other."

It is interesting to note that in the cited case the court held that Bal. Code, § 4576, which provided that "every agreement that by its terms is not to be performed within one year from the date of the making thereof" shall be void, unless such agreement or some note or memorandum thereof be in writing, signed by the party to be charged therewith, etc., had no application to lease of real property. The opinion states:

"The legislature cannot be presumed to have done an idle thing, and when, in § 4568, it provided that, 'Leases may be in writing or in print or partly in writing and partly in print, and shall be legal and valid for any term or period not exceeding one year, without acknowledgment, witnesses or seals,' it must be assumed that it intended thereby to modify § 4517, which provides that all contracts evidencing any incumbrance upon real estate shall be by deed. These different statutes, it seems to us, entirely supersede the English statute of frauds relating to real property."

Bal. Code, § 4568, is the same as Rem. Rev. Stat., § 10618, and Bal. Code, § 4517, is the same, so far as material here, as Rem. Rev. Stat., § 10550 [P. P. C. § 497-1].

In *Watkins v. Balch,* 41 Wash. 310, 83 Pac. 321, 3 L. R. A. (N. S.) 852, there was involved an oral lease of farm lands for a period of five years. The lessee entered into possession under the agreement. The opinion states:

"The sole question presented by the record is the valid-

ity of the oral lease. The appellants concede that ordinarily an oral lease of real property for a longer period than one year is void under the statute of frauds, but they argue that, because of the peculiar nature of the rental they were to attorn for the use of the land, this case is differentiated from the ordinary oral lease where only a money rent is reserved, and presents equitable features which entitle the appellants to the full enjoyment of the term."

The opinion further states:

"An oral lease, therefore, where possession of the property has been taken, is not void in toto, but it may not be a lease for the term agreed upon. If the rent reserved is to be paid periodically it is a lease good for one of such periods, but subject to be terminated at the end thereof, or at the end of any other of such periods. Thus, under the statute, where one enters into the possession of real property under an oral lease for a definite time with periodic rent reserved, he is not a tenant for the time agreed upon, but a tenant from period to period, corresponding to the times on which rent is payable. Such a lease can be terminated, as the statute provides, by written notice given at the prescribed time before the end of such period. [Citing cases.]

"On the other hand, the courts generally hold that, where there is an entry and the payment of rent in advance for a fixed term under an oral lease, the lease is good for an entire term, although the lease be a longer term than is permitted by the statute; this on the principle that it would be permitting the statute to perpetrate, rather than prevent, frauds if thereunder a landlord may accept rent for a given term and then use the statute to evict the tenant before the end of such term."

See, also, *Dorman v. Plowman*, 41 Wash. 477, 83 Pac. 322, which involved a written, unacknowledged lease of farm land for four years, at a yearly rental of four hundred dollars.

*Northcraft v. Blumauer*, 53 Wash. 243, 101 Pac. 871, 132 Am. St. 1071, involved an oral lease of a right of way for a logging road for more than one year. In the cited case we stated:

"A parol lease for a longer period than one year, where the lessee has taken possession with the consent of the lessor, is only voidable, and it will not be terminated at

the instance of the landlord when such course would be inequitable."

The facts justifying the application of the equitable doctrine were that the lessee had taken possession, constructed a road at an expense of five thousand dollars, benefited the land by ditches, and purchased lessor's timber as an incident to procuring the right of way.

In the case of *Koschnitzky v. Hammond Lbr. Co.*, 57 Wash. 320, 106 Pac. 900, which involved a written, unacknowledged lease for a logging road, the opinion written by Judge Dunbar states:

"Of course, if this were the ordinary case of an unacknowledged lease for a fixed period beyond one year, with provision for yearly rental, there would be no escape from the conclusion that it was, in effect, *an oral lease,* void under the statute of frauds—*at least, void so far as the duration of the lease is concerned*; for the statute itself provides that, in such case, where possession is taken thereunder, it shall be construed to be a tenancy from month to month or from period to period and can be terminated by the lessee by giving thirty days' notice preceding the end of such period. So that it will be seen that the statute does not make the lease void *in toto,* and this was all that was decided in *Watkins v. Balch,* 41 Wash. 310, 83 Pac. 321, 3 L. R. A. (N.S.) 852." (Italics ours.)

See, also, *Garbrick v. Franz,* 13 Wn. (2d) 427, 125 P. (2d) 295, where it is stated that "an unacknowledged lease has no more force than an oral lease."

We also desire to call attention to the case of *Forrester v. Reliable Transfer Co.,* 59 Wash. 86, 109 Pac. 312, Ann. Cas. 1912A, 1093, wherein this court had before it a written lease for five years, signed by both parties and acknowledged by the lessee but not by the lessor. In holding that the lease was not properly acknowledged, we stated:

"We are of the opinion that the acknowledgment of the execution of the lease here involved cannot be proved by parol, nor by other evidence than the certificate of an officer authorized to take acknowledgments written upon or annexed to the lease. It follows that we must regard this lease as unacknowledged."

We now come to the case of *Anderson v. Frye & Bruhn,* 69 Wash. 89, 124 Pac. 499, hereinbefore referred to, which in our opinion definitely decides, contrary to appellant's contention, the question here presented. This case, in our opinion, shows that this court has refused to recognize any distinction between an extension of a lease and an option for a new lease.

While appellant in the instant case uses the phrase "option for a new lease," in view of the authority cited by appellant herself and the authorities generally it will be assumed that the phrase has in general the same effect as a covenant for the renewal of a lease. We quote from appellant's brief:

" 'Properly speaking, a covenant for renewal is not a present demise which of itself will continue the lease for the period of renewal, but calls for a new lease.' (123 A. L. R. p. 465.)

"In *Orton v. Noonan,* 27 Wis. 272, quoted in *Luthey v. Joyce* (Minn.) 157 N. W. 708, L. R. A. 1916E 125, it is said:

" 'There is a distinction between a stipulation to renew the lease for an additional term and a stipulation to extend the lease for an additional term. The former requires the making of a new lease; the latter does not.' . . .

"The editors of 35 C. J. state the rule applicable to our case on page 1154, note 77a:

" 'The existence of an option for a period which, together with the original term, would exceed the period specified by the statute does not of itself make attestation or acknowledgment necessary.' "

It will be understood that the last three citations are taken from appellant's brief. As we proceed with a discussion of the *Anderson* case, *supra,* we think it will become evident that, while the court was cited to authority making the distinction above pointed out between a covenant to extend and a covenant for renewal of a lease, this court refused to make such distinction in regard to an unacknowledged lease.

In the *Anderson* case, the lease provided:

"This lease is made for a term of one (1) year from date market opens (with the privilege of two years' *renewal* at a rental satisfactory to both lessor and lessee), at the

monthly rent of one hundred ten dollars, gold coin of the United States of America, said rent to be due and payable as follows: In advance, and thereafter on the first day of each and every month." (Italics ours.)

It will be noticed the lease in the cited case provides for a *renewal,* which, under the authorities above cited, calls for a new lease.

While the above lease was executed in February, 1910, the market was not opened so that the tenant could take possession until June 4, 1910, and on the last-named date the tenant did go into possession of the premises. On August 27, 1910, the lessee, deeming the lease void because unacknowledged and that therefore the tenancy was one from month to month only, gave to the lessor the thirty-day notice provided by Rem. & Bal. Code, § 8803, of its intention to vacate the premises and terminate the tenancy on October 1, 1910, and did, on the date last mentioned, vacate the premises. In June, 1911, upon the expiration of one year after the lessee went into possession of the premises, the lessor commenced an action seeking recovery of rent for the entire year. Judgment was rendered in the lower court in favor of the lessor for the full amount claimed, which covered the time before and after the vacation of the premises by the lessee. We quote from the opinion in the cited case:

"The questions here presented relate only to the validity of this contract as a lease or as an agreement for a lease. Counsel for appellant contends that the contract is void, viewed in either of these aspects, because it is not acknowledged as required by law, and that therefore the tenancy under which appellant was in possession of the premises was nothing more than a month to month tenancy, the rent being payable monthly, which it had a right to terminate by its notice and vacation. Counsel for respondent contends that the contract does not purport to create a tenancy for a period exceeding one year, and that therefore it is not void for want of acknowledgment. Both apparently concede that, if the contract is void for want of acknowledgment, the tenancy was only from month to month, and was effectually terminated on October 1, 1910, by appellant's notice and vacation."

The opinion then refers to Rem. & Bal. Code, §§ 8745, 8746, and 8802, which sections, in so far as material, are the same as Rem. Rev. Stat., §§ 10550, 10551, and 10618.

The opinion continues:

"In compliance with these provisions, this court has declined to recognize the validity of leases and agreements for leases of real property for a period exceeding one year when they are not in writing, and when they are not acknowledged. [Citing the *Richards, Watkins, Dorman* and *Forrester* cases to which we have hereinbefore referred.]"

We next desire to quote the argument of respondent (lessor) in the cited case, which, as we have said, is almost identically the same as that made by appellant in the instant case:

"Learned counsel for respondent argues that this contract does not purport to create in appellant [lessee] a present interest in the premises beyond the one-year term; that is, that it is a lease for one year only, with the added agreement for renewal, which means the making of another lease at the end of the year, and hence, does not require acknowledgment in so far as its validity as a lease for one year is concerned. He has industriously collected, and ingeniously applied in his argument, many authorities dealing with the technical legal nature of the present interest created in a lessee, by a lease for a fixed term containing a covenant for *renewal* or *extension* beyond the term. . . . It would seem that this argument of counsel could only be successfully maintained *on the theory that there is evidenced by this writing two separate contracts,* one being a lease for one year, the other being an agreement for the giving of a new lease at the end of the year; and that the validity of each can be determined without reference to the other. This theory, if sound, of course would enable us to hold the lease for one year valid, *regardless of the validity of the agreement for renewal.* But this, it seems to us, *is wholly untenable.* While this is a contract in which the parties have agreed to different things; the writing manifestly evidences a single transaction and a single contract, each of its parts being related to all its other parts. We cannot say that appellant would have agreed to take the premises for one year and assume the obligation to pay rent therefor during that term without the agreement on the part of respondent for renewal

which we find in this writing. Indeed, we must presume that each of the covenants agreed to be performed by one party formed a part of the inducement for the other party entering into the contract. *This being a single contract, the agreement for renewal is inseparable from the lease for one year*; and it being necessary to have the renewal agreement acknowledged, even if standing alone, we need not concern ourselves with the technical legal nature of the lessee's present interest under the renewal agreement." (Italics ours.)

Appellant seeks to distinguish the cited case from the instant one on the theory that in the cited case the covenant for renewal was for two years, while in the instant case it is for only one year.

We fully appreciate the distinction appellant attempts to make between the cited case and the instant case, based upon the difference of the renewal term, but we are of the opinion the decision in the cited case is not based upon the claimed difference but upon the theory that an unacknowledged lease for one year, with a covenant for either a renewal or extension for any period beyond the one year, is void, in so far as the duration of the contemplated term is concerned, and creates only a tenancy from month to month or period to period, depending upon when the rent is payable.

If, as was stated in the cited case, the agreement to lease for the original period and the covenant to renew must be construed together as one contract, then it could make no difference whether the covenant to renew was for only one year or for a longer period, because in either event the lease would be for a contemplated term of more than one year and would be void in so far as the contemplated term is concerned.

So far as we have been able to determine, the above-cited case has never been overruled, and while it may not be strictly in accord with the decisions in some other jurisdictions, it is the pronouncement of this court, and we are of the opinion it is controlling of the question here presented.

We may state further that we think our interpretation of the cited case finds support in subsequent decisions by this court. In *Backus v. Feeks,* 71 Wash. 508, 129 Pac. 86, Ann. Cas. 1914C, 552, referring to the *Anderson* case we stated:

"In *Anderson v. Frye & Bruhn,* 69 Wash. 89, 124 Pac. 499, we held, that an unacknowledged lease of real property for the term of one year 'with the privilege of two years' renewal,' at a stipulated monthly rental, created a paper tenancy *for a period exceeding one year,* that it was not enforceable as a lease for one year only, but that it was a lease from month to month, and terminable by either party upon his giving the notice provided by the statute, Rem. & Bal. Code, § 8803. The language of the opinion is that the lease was 'void and unenforceable' as a lease for one year, in that it created a *privilege of renewal for a period beyond one year,* and that 'the tenancy under which appellant was in possession of the property prior to October 1, 1910, was terminated on that day by notice and vacation.'" (Italics ours.)

We conclude, therefore, that the lease here in question, providing as it does for a term of one year with an option for a new lease to run for one year beyond the expiration of the one year term, was unenforcible either as a lease for one year or for the contemplated period of two years, and that at most it created nothing more than a tenancy from month to month, which could be, and was, terminated by respondent (lessor) by giving the twenty-day notice provided by subd. (2) of § 812, *supra.* It follows, therefore, that the lower court did not err in so holding.

It is next contended that respondent waived its right to insist upon acknowledgment, both by its conduct in connection with the execution of the instrument and by subsequent acceptance of its benefits.

In regard to appellant's theory as to what took place at the time the lease was executed, we quote from appellant's brief:

"The appellant asked that the lease be notarized and *was assured* that the respondent's notary would take care of that formality." (Italics ours.)

Appellant has used the word "waiver" as the basis for this contention.

"A waiver is a voluntary and intentional abandonment or relinquishment of a known right." 19 Am. Jur. 636, § 36.

In *Eakle v. Hayes,* 185 Wash. 520, 55 P. (2d) 1072, we defined a waiver as a voluntary or intentional relinquishment of a known right.

Prior to the time the lease here in question was drafted and presented for the signature of the parties, appellant had had a form of lease prepared, which contained a form for acknowledgment. This form lease was presented to respondent and was by it rejected; at least it was never signed by respondent, but instead Mr. Hanauer, attorney for respondent, prepared the lease here in question, which contains no form for an acknowledgment.

We now quote from appellant's testimony her version of what took place when the lease was presented to her:

"Q. Who was present in the Secretary's office when it [the lease] was signed? A. Mr. Walters and the stenographer at that time Mrs. Kauffman and Mr. Janke and Mr. Storms, I think, was standing in the door at that time. He was President of the Labor Hall Union. Q. Was there anything said at that time about a notary public? A. I said, 'Who is going to notarize that?' And Mrs. Kauffman said she was a notary public and she acted as such for the Labor Hall for Local 238 and for those in the building and so I never thought any more of it and thought that she was going to notarize it there and I went back to my work in the restaurant. THE COURT: (Q) Did you take the signed lease with you at that time? A. I took one, yes, and I took a copy with my name on it and Mr. Anderson's and Mr. Janke's, and they took the other one and put it in the safe as I was going out of the door. Well, it didn't get notarized. Q. Was there more than one that was signed? A. Two. I have one myself. Q. Signed by both of you? A. Yes, signed by the same people."

Mr. Walters, who was on the board of respondent and who seems to be the man who first contacted appellant and who handled this transaction for respondent, testified as

follows in regard to what took place when the lease here in question was signed:

"MR. GARVIN: (Q) Now, when the lease was executed, how was it signed? Well, just a minute, strike that. Was it signed by Norman Anderson, who is seated next to me, as President of the Board prior to the execution by Mrs. Danielsen; in other words, did she sign it before or did he sign it before Mrs. Danielsen signed it? A. Yes, he signed it before she did. Q. And then did you deliver the lease to Mrs. Danielsen, did you hand it to her after it was signed by Mr. Anderson? A. Mr. Janke did. Q. Oh, were you present? A. Yes, I was present when he did. Q. What did she do when she got the lease then? Strike that. You heard her testimony that you gave her that lease there in the morning and she kept it that day and returned it the day following, kept it that day and returned it the following noon. Is that correct? A. That is correct. Q. When she returned it was there any conversation about having it notarized? A. No. Q. Were you present when Mrs. Danielsen signed that lease? A. Yes. Q. Was Mrs. Kauffman present? A. She was in the office. Q. Did you hear Mrs. Danielsen tell Mrs. Kauffman that she wanted it notarized? A. No, sir."

Apparently appellant paid no further attention to the lease until sometime in October, when she testified she called at the office and Mrs. Kauffman told her that Mr. Walters would not let her notarize the lease. It does not appear that appellant ever asked any of the officers of respondent about this matter, or that she asked anybody to have the lease acknowledged, other than Mrs. Kauffman.

We are clearly of the opinion the facts herein shown are not sufficient to constitute a waiver on the part of respondent.

In addition to the denial by Mr. Walters that Mrs. Danielsen said anything about having the lease notarized at the time it was signed, we are of the opinion that respondent cannot be bound by a voluntary statement which may have been made by a stenographer in its office without a further showing of authority on her part to so bind it or some further fact or facts upon which a waiver could be based.

It seems to us all the facts plainly indicate that respond-

ent never intended to give to appellant an acknowledged lease.

As to the acceptance of benefits, there is no showing that respondent accepted or received anything other than the agreed rent.

 Appellant's last contention is that respondent is estopped to deny the validity of the lease by the equitable doctrine of part performance.

We have recognized the equitable doctrine above mentioned, and we are entirely in accord with the following decisions of this court, cited by appellant, where that doctrine was invoked: *McGlauflin v. Holman,* 1 Wash. 239, 24 Pac. 439; *Schulte v. Schering,* 2 Wash. 127, 26 Pac. 78; *Dorman v. Plowman,* 41 Wash. 477, 83 Pac. 322; *O'Connor v. Oliver,* 45 Wash. 549, 88 Pac. 1025; *Northcraft v. Blumauer,* 53 Wash. 243, 101 Pac. 871, 132 Am. St. 1071; *Matzger v. Arcade Bldg. & Realty Co.,* 80 Wash. 401, 141 Pac. 900, L. R. A. 1915A, 288; *Armstrong v. Burkett,* 104 Wash. 476, 177 Pac. 333; *Zinn v. Knopes,* 111 Wash. 606, 191 Pac. 822; *Lamken v. Miller,* 181 Wash. 544, 44 P. (2d) 190; and *Garbrick v. Franz,* 13 Wn. (2d) 427, 125 P. (2d) 295.

We are clearly of the opinion appellant has not brought herself sufficiently within the factual situation presented in any of the above-cited cases to make the rules relative to estoppel therein announced applicable herein.

Appellant admits that she made no physical improvements of any kind to the premises; in fact she admits the restaurant was furnished to her completely equipped. The only fact which she claims as a basis for estoppel is that both she and her husband devoted their time and energy to the building up of a business, and some claim is made that respondent benefited by this time and energy on their part as it profited in proportion to the amount of business done.

We quote from one of the cases cited by appellant, for the purpose of showing that under the rule established in

this state the acts relied upon by appellant are not sufficient to create an estoppel. In the case of *Armstrong v. Burkett, supra,* after stating that an oral lease for any term can only be sustained as a lease from month to month, the opinion continues:

"Defendant seeks to avoid the rule by setting up facts which are relied upon to create an estoppel; that, relying upon her contract, she made certain expenditures about the storeroom in the way of shelving, wall cabinets, and in changing the front of the store; *that she had built up a business of some proportion;* that she was wholly dependent upon the business for her support; that she could not get another location, and that she had ordered goods for the Christmas trade.

"But manifestly these things are not matters of estoppel. The things done were all for the benefit of the lessee and were in no sense a consideration going to the entire term. The purchase of goods and the building up of a business, as well as the purchase of seasonable goods, were all incident to the contract. Defendant is charged with the knowledge that her lease was oral and subject to forfeiture from month to month and that she might have provided against such consequence by insisting upon a sufficient contract. . . .

"To make an oral lease good for one year under the theory of estoppel there must be some element of benefit to the landlord *aside from the rent reserved,* or some injustice to the tenant that a court of equity will not tolerate, as, for instance, where the landlord has made the lease conditioned upon some alteration or improvement that would enhance the value of the property, or where the value of the property lies in the taking of an annual crop. In other words, the mere possession, the payment of rent and the conduct of a business in the usual way and for the sole benefit of the tenant, unaccompanied by circumstances which will create a consideration going to the term, will not make an oral lease from month to month a term lease resting in estoppel." (Italics ours.)

As hereinbefore shown, this court has applied the same rules to an unacknowledged lease of real estate as to an oral lease.

Under the rules last above announced, we are satisfied appellant has not shown facts sufficient to create an estoppel.

We find no error in the record to justify the granting of appellant's motion for a new trial; and being satisfied that the judgment entered is supported by substantial evidence, we conclude that the judgment of the trial court must be, and it is, affirmed.

BEALS, C. J., BLAKE, ROBINSON, and GRADY, JJ., concur.

[1]Reported in 163 P. (2d) 574.