[No. 3231–II.   Division Two.   December 21, 1979.]

BREMERTON CENTRAL LIONS CLUB, INC., *Appellant,* v.
MANKE LUMBER COMPANY, ET AL,
*Respondents.*

*Stanley G. Williams,* for appellant.

*Roy F. Kussman* and *Richard P. Matthews,* for respondents.

PEARSON, C.J.—This case involves a dispute about the proper amount of damages to be awarded to a seller of real estate when the buyer does not perform the contract.

On June 2, 1976, cross appellant Charles Minium, Jr. (Minium) purchased, pursuant to a real estate contract, 80 acres of land from the Bremerton Central Lions Club, Inc. (Lions Club). The total purchase price was to be $104,300.28, of which $30,000 was paid as a down payment. The land was forested. The real estate contract expressly provided that the purchaser could log and sell the timber after paying a total of one–half of the purchase price (or about $22,000 in addition to the down payment). The contract also provided that the purchaser could prepare the land for future development if "seller's security shall not be impaired."

Even before making the down payment, Minium, in direct contravention of the contract, sold the standing timber on the land. In fact, Minium had entered into an earnest money agreement to convey the timber to Manke Lumber Co., Inc. (Manke) on May 25, 1976. On June 1, 1976, Manke and Minium entered into a timber sales contract and Manke paid a $2,000 deposit on the purchase price. On June 3, 1976, a timber deed was delivered by Minium to Manke. Manke, in turn, paid $69,000, the agreed balance of the purchase price for the timber. The evidence suggests Minium used $30,000 of the money to make the down payment and simply pocketed the balance.

In the timber deed, Minium warranted title to the timber. In response to an inquiry, Manke received an explicit assurance from Minium that he had paid the sellers the required $52,000 on the purchase price and so could log the land.

After it received the timber deed, Manke began logging operations. When a representative of the Lions Club observed the logging and reported it to the club, an inquiry to Minium's agent was met with a statement that the only logging going on was some minor road clearing. Three weeks later, when it became clear that full scale logging was

going on, the Lions Club demanded that Minium pay the $52,000 agreed upon before any further logging took place. Minium replied by demanding deed release covering part of the land. When this demand was not met, Minium simply refused to make any further payments at all. The $30,000 down payment was thus the only payment Minium made.

The Lions Club gave proper notice of its intention to declare a forfeiture of the real estate contract and later did declare such a forfeiture. The Lions Club then brought an action to quiet title to the land in itself and to recover damages against both Minium and Manke. The trial court, after allowing Minium a grace period to bring the contract current, did quiet title in the Lions Club and gave it judgment for $22,150.14 (the balance of one–half the purchase price) but dismissed claims for damages against Manke and for further damages against Minium under the treble damage provisions of RCW 64.12.030.

The Lions Club has appealed from the trial court's dismissal of claims against Manke and of claims for treble damages against Minium. Minium has cross–appealed from the $22,150.14 judgment entered against him. The validity of the decree quieting title in the Lions Club is not in issue in this court. For the reasons set forth below, we modify the amount of the judgment against Minium, reverse the dismissal of the claims against Manke, and remand this case to the Superior Court. Because the issues involved in the claims against Minium are rather different from those involved in the claim against Manke, we will discuss them separately.

Consideration should be given first to a matter raised in Minium's cross appeal. This is the question of whether seeking forfeiture of the purchaser's interest in a real estate contract constitutes an election of remedies which forecloses the seller from recovering damages against the purchaser except to the extent that the seller retains payments made by the purchaser as liquidated damages. We hold that the seller has not pursued inconsistent remedies in this case.

██ ██ Minium is correct in asserting that Washington recognizes the doctrine of election of remedies. The requirements for binding a party to an election of remedies are set forth in the opinion in *Lange v. Woodway*, 79 Wn.2d 45, 483 P.2d 116 (1971). The three elements are that (1) there must be two or more available remedies; (2) the remedies must be inconsistent with one another; and (3) the party to be bound must have chosen one of the remedies.

In the present case, Minium's contention can be resolved by an analysis of factor two, relating to the inconsistency of the remedies. We hold that there is no inconsistency in seeking to forfeit the interest of a contract purchaser of land and at the same time seeking damages for conversion of timber from that purchaser.

The rationale for the election of remedies concept is prevention of double recovery for the same wrong. It seeks to prevent a party from asserting inconsistent positions in order to recover more than the value of the harm suffered. *Willis T. Batcheller, Inc. v. Welden Constr. Co.*, 9 Wn.2d 392, 115 P.2d 696 (1941). To employ such a rule in the present case would be to overlook reality. To apply the election of remedies concepts, the remedies must be repugnant, not merely cumulative. *Labor Hall Ass'n v. Danielsen*, 24 Wn.2d 75, 163 P.2d 167, 161 A.L.R. 1079 (1945).

██ In this case, it is clear that title to the land sold under the real estate contract had some value. However, it is also clear that the timber on the land had considerable value. Manke paid $71,000 for it in an arm's-length transaction. Other evidence indicated that it was in fact worth $76,000. Whatever its actual value, it is clear that this timber could be conveyed to a third party without affecting title to the land upon which it stood prior to logging operations. *See* RCW 62A.2-107.

██ Since title to the real estate and to the timber can readily be separated, we see nothing inconsistent in allowing recovery of unencumbered title to the land by forfeiture of the purchaser's contract interest—together with the

retention of liquidated damages for breach of the real estate contract—and also allowing recovery of tort damages for the value of timber severed from the land and converted. By setting off the liquidated damage under the real estate contract against the damages awarded for the timber conversion, double recovery can be prevented.

Were the rule otherwise, as Minium argues, the result would be to enrich a wrongdoer at the expense of an innocent seller of land. In the present case, for example, return of the land, without the timber, would hardly adequately compensate the Lions Club. Recovery of title to the land would only compensate the club for the loss it suffered because Minium breached the real estate contract. No recovery for the loss suffered because Minium converted the timber would be allowed under the rule argued by Minium. A breach of contract obviously is a breach of contract. A wrongful severance of trees constitutes the tort of conversion. *Grays Harbor County v. Bay City Lumber Co.,* 47 Wn.2d 879, 289 P.2d 975 (1955).

█ The provisions of the real estate contract which allow forfeiture of the purchaser's interest and retention of the payments made as liquidated damages are not inconsistent with allowing recovery for conversion for a second, independent reason as well. It is well established that every contract is made with reference to the law as it exists at the time the contract is made. *Escrow Serv. Co. v. Cressler,* 59 Wn.2d 38, 365 P.2d 760 (1961).[1] In essence the existing law becomes a term of the agreement. The legislature has long recognized that wrongful severance of timber is a tort. RCW 64.12.030. Exclusion of recovery of damages for this tort under a provision which limits contractual damages to recovery of liquidated damages where title is also recovered would thus be repugnant to the concept that established

---

[1]Questioned on other grounds in *Pacific States Cut Stone Co. v. Goble,* 70 Wn.2d 907, 425 P.2d 631 (1967) and *Baffin Land Corp. v. Monticello Motor Inn, Inc.,* 70 Wn.2d 893, 425 P.2d 623 (1967).

law is part of the contract, because it would make the liquidated damages the exclusive remedy for both breach of the contract and for an independent tort, conversion.

Having established that the Lions Club may properly recover both for breach of the real estate contract and for conversion of the timber, we now turn to the issue of the proper measure of damages for the conversion of the timber. In this regard, the Lions Club argues correctly that the recovery the trial court awarded is inadequate and that damages should be assessed under RCW 64.12.

■ The legislature, in RCW 64.12.030 and 64.12.040, has provided a statutory measure of damage for conversion of timber. These statutes have been construed to award the damaged party the stumpage value of the timber unless some other, greater, fair market value can be proven. *Pearce v. G.R. Kirk Co.*, 92 Wn.2d 869, 602 P.2d 357 (1979); *Grays Harbor County v. Bay City Lumber Co., supra.* In the present case, as noted above, this means that the trial court should consider any evidence the parties may properly wish to present about the stumpage or other fair market value of the timber and arrive at a value for the converted timber. To avoid double recovery, the $30,000 down payment made by Minium should then be subtracted from the value which the trial court finds for the timber. Finally, the result of this calculation should be trebled in accordance with RCW 64.12.030.

The present case is clearly not one in which Minium can demonstrate any of the mitigating factors which would, under RCW 64.12.040, allow award of single damages only. Minium does not even seriously contend that his actions regarding the timber were not willful. It appears Minium, with full knowledge of what he was doing, conveyed timber he did not own to Manke. This alone establishes conversion of the timber. *See Seattle–First Nat'l Bank v. Brommers*, 89 Wn.2d 190, 570 P.2d 1035 (1977); *Judkins v. Sadler–Mac Neil*, 61 Wn.2d 1, 376 P.2d 837 (1962). In the present case, however, Minium went much farther. He made a false representation to Manke that he had made the payments

necessary to secure the right to log the land. Through his agent he further attempted to hide the true nature of the logging operation from the Lions Club. Finally, everything Minium did he did knowing that he was violating express terms of his contract with the Lions Club.

We now turn to the propriety of the Superior Court's dismissal of Manke. For the reasons set forth below, we reverse this dismissal and remand the matter for such further proceedings as are necessary to assess damages.

The trial court's rationale for dismissing claims against Manke is not precisely clear from the record. There is, however, an undisputed finding of fact that the Lions Club knew Manke was logging and never made any request that the logging be stopped and never notified Manke that the logging was wrongful. The trial court seems to have held that the Lions Club had a duty to prevent Manke from logging the land, and that the Lions Club somehow waived its claims against Manke by inaction. Manke also seems to be arguing for the same election of remedies result advocated by Minium.

The election of remedies problem has already been analyzed and no purpose would be served by repeating that analysis. The contention that the Lions Club waived its claims against Manke by inaction does require discussion, however.

In our view, the record does not support the trial court's action. It is undisputed that Manke's timber buyer had seen the contract between Minium and the Lions Club. Manke is thus charged with knowledge that Minium sold it timber he did not own. It is also charged with knowing that Minium was required, under the real estate contract that was ultimately made, to make payments of one–half the purchase price before the land could be logged. Manke's agents, in fact, made inquiry to Minium about whether he had made the required payments.

Manke's efforts to act in good faith will not protect it from liability. It has long been held that even an innocent purchaser of converted timber is liable to the rightful owner

for its value. *Grays Harbor County v. Bay City Lumber Co., supra.* In this case, Manke clearly was aware that there was a question about Minium's title to the timber, but it acted anyway. Manke is thus liable to the Lions Club for some amount of damage. While good faith does not save Manke from liability, it will serve to avoid treble damages under RCW 64.12.030. RCW 64.12.040 provides for the award of single damages if mitigating factors are present in the case of a timber trespass. *Gibson v. Thisius,* 16 Wn.2d 693, 134 P.2d 713 (1943). First of all, the Lions Club did not attempt to notify Manke of its wrongful actions. Rather than a release of Manke from all liability, this omission constitutes a reason for releasing Manke from treble damage liability. Manke is charged with knowledge that its right to log was open to question. The land owner's inaction at worst estops it from claiming treble damages. Even if the Lions Club failed to mitigate its damages, this failure does not excuse Manke from liability, though it does weigh against imposition of treble damages under RCW 64.12.030. The other fact which weighs heavily in Manke's favor is its effort to ascertain that Minium did indeed have title to the timber.

In summary, we find that Manke and Minium are jointly liable for single damages and that Minium alone is further liable for the enhanced damages provided for in RCW 64.12.030. Were it not for the problem of a potential double recovery, Manke clearly would not be entitled to any credit on the damages it owes on account of Minium's payment of $30,000. *Grays Harbor County v. Bay City Lumber Co., supra.* However, we hold that in this case, Manke, like Minium, should have the benefit of the deduction of this payment so that double recovery can be avoided. We remand this cause to the Superior Court for fixing of the amount of the single damages and for entry of a judgment in favor of the Lions Club and against the defendants in accordance with this opinion.

Reversed and remanded.

REED and SOULE, JJ., concur.

Reconsideration denied January 23, 1980.

Review denied by Supreme Court March 7, 1980.