[No. 52163–8.   En Banc.   September 18, 1986.]

DONALD J. KRUGER, ET AL, *Appellants,* v. WAYNE R. HORTON, ET AL, *Respondents.*

*Ernest L. Meyer, Thomas L. Meyer,* and *Paul H. Meyer,* for appellants.

*Hollis H. Barnett,* for respondents.

PEARSON, J.—The primary issue in this case is whether sellers, who elect to forfeit the purchasers' interest in a real estate contract and retain payments made under the contract as liquidated damages, also are entitled to additional damages for waste or conversion for the removal of a substantial amount of standing timber by the purchasers from the property sold. We hold, based on the facts of this case, that the sellers are not entitled to damages for waste or conversion, in addition to liquidated damages under the contract.

The appellants are Donald J. Kruger and his wife, Nina (sellers), and their daughters, Robin and Paula Kruger. The respondents are Wayne R. Horton and his wife, Carol (purchasers). The sellers owned a tract of land in Thurston County encompassing approximately 7 acres. There were several buildings and a substantial number of large fir trees situate on the property.

In May 1981, the sellers and the purchasers met and discussed the sale and purchase of the entire 7 acres. The purchasers advised the sellers that they would not be interested in purchasing the property unless the property could be divided into six parcels without the necessity of a formal subdivision. The Thurston County Planning Department advised the sellers that if they made a gift of one lot to each of their two daughters, the remaining parcel of property could be subdivided into four lots by the filing of a short plat, which would be substantially less complicated than filing a formal subdivision plat. In June 1981, the sell-

ers executed quitclaim deeds of approximately 1–acre parcels to each daughter.

On August 7, 1981, the sellers entered into a real estate contract with the purchasers to sell the main parcel of property which contained all the improvements on the property. The sale price was $108,000 with a $14,000 down payment. The contract provided that the purchasers were to pay an additional $51,000 when they sold their present home or, in any event, by December 1, 1981, and that the purchasers were to pay the balance of the purchase price on or before 2 years from the date of the contract. Robin Kruger contemporaneously entered into a real estate contract with the purchasers wherein she agreed to sell to the purchasers the single parcel conveyed to her by her parents. The Robin Kruger contract provided that the sale price was $6,000 with a $1,000 down payment. The balance of $5,000 was to be paid in one payment upon the procurement of a building loan on this particular lot. The provisions in both real estate contracts provided that time was of the essence. In the event payments were not made as required, any and all improvements placed upon the property were to be forfeited to the sellers as liquidated damages, and the sellers would have the right to reenter and take possession of the real estate. Both contracts also contained a provision whereby the purchasers covenanted to keep the buildings and other improvements on the real estate in good repair and not to permit waste.

On the same day, Paula Kruger executed an Option for Sale wherein she agreed to sell to the purchasers her 1–acre parcel. The Option for Sale was expressly conditioned on the purchasers' fulfillment of all the payments under the original contract with the sellers.

In October 1981, the purchasers entered into an agreement with a logger who cut and removed all the merchantable timber from all three tracts of land. The purchasers received $9,661.40 from the sale of said timber.

In November 1981, the parties agreed to amend the existing contract to allow the purchasers to pay $500 per

month beginning January 1, 1982, with the balance to be paid by June 10, 1982. The purchasers made the January payment, but failed to make any additional payments. In May 1982 the sellers returned to Washington from Arizona where they had been spending the fall and winter months. Upon arrival, the sellers learned of the purchasers' removal of timber and were informed by the purchasers that the purchasers were abandoning the property. Shortly thereafter, the sellers reentered the property and filed a summons and complaint to forfeit the contract and recover damages for removal of the timber. During the pendency of the suit, the purchasers tendered the entire balance owing on the Robin Kruger contract, together with interest. However, this tender was refused.

The trial court found that the separate transactions were in reality one sale. The court then canceled and forfeited the purchasers' rights in all of the property and quieted the sellers' title to the real property. Additionally, the court held that the removal of timber from the property constituted waste. Nonetheless, the court dismissed the sellers' claim for damages because there was no proof of any diminution in value of the property and because the sellers received liquidated damages which exceeded the amount received by the purchasers for the timber removed. The sellers appealed to the Court of Appeals and the case was transferred to this court for review pursuant to RAP 4.3.

I

The first issue is whether the contract between Robin Kruger and the purchasers, and the contract between Donald Kruger and his wife and the purchasers, should be construed as a single transaction. The trial court, after considering the circumstances surrounding the creation of both contracts, concluded that the contracts were intended to be one transaction. The purchasers argue that the real estate contract which they entered into with Robin Kruger was a separate contract not integrated with Donald Kruger's contract. Thus, according to the purchasers, the trial court

erred in considering *any* parol evidence to construe the two separate contracts as one transaction.

In Washington it is a well settled principle that written instruments contemporaneously executed as part of the same transaction will be considered and construed as one transaction. *See Spokane Helicopter Serv., Inc. v. Malone,* 28 Wn. App. 377, 382, 623 P.2d 727, *review denied,* 95 Wn.2d 1020 (1981) (citing *Paine–Gallucci, Inc. v. Anderson,* 41 Wn.2d 46, 50, 246 P.2d 1095 (1952)); *Mead v. Anton,* 33 Wn.2d 741, 207 P.2d 227, 10 A.L.R.2d 588 (1949); *Moore v. Gillingham,* 22 Wn.2d 655, 157 P.2d 598 (1945); *Vance v. Ingram,* 16 Wn.2d 399, 133 P.2d 938 (1943); *Standring v. Mooney,* 14 Wn.2d 220, 127 P.2d 401 (1942); *Shannon v. Prall,* 115 Wash. 106, 196 P. 635 (1921).

In the present case, there was substantial evidence that the two real estate contracts were executed as part of the same transaction. The contracts were executed at the same time. The negotiations regarding the sale of the property were between Donald Kruger and Wayne Horton; the daughters were only signatories. The daughters realized no economic benefit from the sale of the property. Prior to the execution of the contracts, Donald Kruger had desired to sell the *entire* property. Finally, it is uncontroverted that the division of the property and subsequent contracts were merely for the convenience of the purchasers. Accordingly, the trial court's conclusion that the two contracts should be construed as a single transaction was proper.

## II

As a preliminary matter, it is undisputed that the purchasers were in default under both real estate contracts. The purchasers defaulted in the payment of the purchase price and abandoned the property. Therefore, under the terms of both contracts, the sellers were entitled to repossess the property and retain the $15,500 down payment as liquidated damages.[1]

---

[1]The parties do not contest the validity of the liquidated damages provision mentioned above.

The principal issue for this court to decide is whether the sellers are entitled to additional damages for either waste or conversion relating to the removal of all the merchantable timber. The trial court held that removal of the timber constituted waste, but dismissed the sellers' claim because there was no evidence of diminution in value of the property. We agree.

Waste encompasses a variety of injuries that may occur to real estate, including the removal of timber. *Seattle–First Nat'l Bank v. Brommers,* 89 Wn.2d 190, 202, 570 P.2d 1035 (1977). Nevertheless, the removal of timber constitutes waste only if it decreases the value of the land. 2 B. Jones, *Real Property* § 634 (3d ed. 1939); 4 G. Thompson, *Real Property* § 1853 (repl. 1979).

Here, the record indicates that the sellers failed to establish that the real property decreased in value as a result of the severance of timber. Therefore, the trial court's conclusion denying damages for waste should not be disturbed on appeal.

The wrongful severance of timber may also constitute a conversion. *See* W. Keeton, D. Dobbs, R. Keeton & D. Owen, *Prosser and Keeton on Torts* § 15 (5th ed. 1984); 18 Am. Jur. 2d *Conversion* § 21 (2d ed. 1985); 52 Am. Jur. 2d *Logs and Timber* §§ 115, 117 (2d ed. 1970); *Grays Harbor Cy. v. Bay City Lumber Co.,* 47 Wn.2d 879, 289 P.2d 975 (1955); *Bremerton Cent. Lions Club, Inc. v. Manke Lumber Co.,* 25 Wn. App. 1, 604 P.2d 1325 (1979). The tort of conversion is "the act of wilfully interfering with any chattel, without lawful justification, whereby any person entitled thereto is deprived of the possession of it." *Judkins v. Sadler–Mac Neil,* 61 Wn.2d 1, 3, 376 P.2d 837 (1962) (quoting Sir J. Salmond, *Torts* § 78 (9th ed. 1936)). The plaintiff in a conversion action must prove a right to possess the property converted. *Junkin v. Anderson,* 21 Wn.2d 256, 258, 150 P.2d 678 (1944); *Bloedel Timberlands Dev., Inc. v. Timber Indus., Inc.,* 28 Wn. App. 669, 679, 626 P.2d 30 (1981).

In this case the sellers, plaintiffs below, cannot prove

a right to possess the timber allegedly converted by the purchasers. The purchasers took possession of the sellers' parcel of land pursuant to a real estate contract. This court has recognized that "under the traditional land sale contract, the vendee has the right to possession of the land, the right to control the land, and the right to grow and harvest crops thereon". *Cascade Sec. Bank v. Butler*, 88 Wn.2d 777, 782, 567 P.2d 631 (1977); *State ex rel. Oatey Orchard Co. v. Superior Court*, 154 Wash. 10, 280 P. 350 (1929). Moreover, "[t]he general rule . . . is that crops attached to the land at the time of a sale or conveyance so far partake of the nature of realty that they pass to the purchaser . . . as appurtenant to the land". 92 C.J.S. *Vendor and Purchaser* § 287 (1955). According to these principles, the sellers lost their right to possess the timber on the property when they allowed the purchaser to take possession of the property under the real estate contract.

Additionally, it is a well settled rule that "[t]he conveyance of timber land without reservation or exception of the timber ordinarily carries the standing timber." 54 C.J.S. *Logs and Logging* § 5 (1948). *See Versai Management, Inc. v. Monticello Forest Prods. Corp.*, 479 So. 2d 477 (La. Ct. App. 1985); *Shipler Logging Co. v. Ponderosa Inv. Co.*, 45 Or. App. 325, 608 P.2d 211, *review denied*, 289 Or. 587 (1980). Thus, a seller who wants to protect the right to possess the timber should do so by an express reservation or exception in the real estate contract. Otherwise, if the purchaser removes timber from the land and subsequently defaults on the contract, the seller may not recover damages for conversion. Nevertheless, the seller's other remedies remain available. The seller may declare the contract forfeited and, if the contract so provides, retain all payments previously made as liquidated damages; or the seller may elect to sue either for specific performance or for damages actually suffered. *Mahoney v. Tingley*, 85 Wn.2d 95, 529 P.2d 1068 (1975); *Russell v. Stephens*, 191 Wash. 314, 71 P.2d 30 (1937).

Here, upon the purchasers' default, the sellers elected to

forfeit the contract and to retain all payments previously made as liquidated damages. The contract, however, did not contain an express reservation to retain an interest in the timber. Consequently, the sellers could not recover additional damages for conversion.[2] Accordingly, we affirm the trial court's decision to limit the recovery for the purchasers' default to the liquidated damages authorized by the terms of the real estate contract.

DOLLIVER, C.J., and UTTER, BRACHTENBACH, DORE, ANDERSEN, CALLOW, GOODLOE, and DURHAM, JJ., concur.

Reconsideration denied October 28, 1986.

---

[2]This case should be distinguished from *Bremerton Cent. Lions Club, Inc. v. Manke Lumber Co.,* 25 Wn. App. 1, 604 P.2d 1325 (1979). In *Bremerton,* the court allowed a seller to recover damages for conversion, in addition to liquidated damages, because the real estate contract contained an express reservation by the seller to retain an interest in the timber.