[No. 20312.   Department Two.   March 31, 1927.]

UNION MACHINERY & SUPPLY COMPANY, *Respondent,*
v. TAYLOR-MORRISON LOGGING COMPANY, *Defendant,*
J. B. WOOD *et al., Defendants and Appellants.*[1]

[1] BILLS AND NOTES (19)—CONSTRUCTION—PARTIES—REPRESENTA-
TIVE CAPACITY.  A note signed in the name of a corporation, and
immediately below by the president and secretary, described
by the abbreviations "Pres." and "Sec." is "signed" only by
the corporation and does not evidence any personal obligation
of the officers.

[2] SAME (138)—EXECUTION OF NOTE—MISTAKE—EVIDENCE—SUFFI-
CIENCY.  Where officers of a corporation were induced to execute
a corporation note as such officers, under the understanding
that they were not to be personally liable, they are not so liable
by reason of the inclusion, in very fine print, of an extraordinary
provision in forms prepared by the payee to the effect that any
person signing as officers of a corporation binds himself as an
individual, where the same was not read or called to their
attention.

[3] EQUITY (74)—DECREE—NATURE OF RELIEF.  Where in an action
on a note, tried to the court, fraud or mistake is proven, the
court may decree that the note be reformed and finally dispose
of the merits.

Appeal from a judgment of the superior court for
King county, Hall, J., entered April 24, 1926, upon
findings in favor of the plaintiff, in an action on
promissory notes, tried to the court.  Reversed.

*Glenn C. Beechler, Jay C. Allen,* and *John F.
Walthew,* for appellants.

*McClure & McClure* and *Walter S. Osborn,* for re-
spondent.

PARKER, J.—The plaintiff supply company seeks re-
covery from the defendants, logging company, J. B.
Wood and the executor of the estate of J. L. Kahaley,

[1]Reported in 254 Pac. 1094.

upon two promissory notes, one of which reads, as follows:

"$217.14          Seattle, Washington, June 3, 1924.
"Two months after date, for value received, I promise to pay to the order of the Union  Machinery & Supply Company, a corporation of the state of Washington with its license fees paid (and licensed to do business in the Province of British Columbia as the Union Machinery & Supply Company, Limited), the sum of Two hundred seventeen and 14/100 Dollars, with interest thereon at the rate of ten per cent per annum from date until paid.

"For value received, each and every party signing or endorsing this note hereby waives presentment, demand, notice of non-payment and protest thereof, and binds himself hereon as principal and not as surety, and agrees to remain bound notwithstanding any extension which may be made to any party liable on this note, consent being hereby given to such extensions. And *each and every party signing this note as officer or agent of a corporation or copartnership, also binds himself individually as principal.* In case suit is instituted to collect this note or any part thereof, it is agreed that the Court may adjudge such sum as may be reasonable as attorney's fees and include the same in the judgment. And in case of such suit, at the option of the holder, the venue thereof may be laid in King County, Washington.

"Taylor Morrison Logging Co.
J. B. WOOD, Pres.
J. L. KAHALEY, Sec."

We have italicized certain words therein to be presently particularly noticed. All of that portion of the body of the note, containing these italicized words, following the words "for value received," is in very fine print, as compared with the other printed portions of the note. The blank spaces were filled in by the supply company's president or agent and the whole thus made ready for signature before being presented to the

president and secretary of the logging company for signing. The other note is in all respects exactly the same, except that it is made payable four months after date. A trial upon the merits in the superior court for King county sitting without a jury resulted in a judgment awarding recovery against the defendants and each of them for the whole of the indebtedness evidenced by the notes, from which Wood and the executor of the estate of Kahaley, he having died since the commencement of the action, have appealed to this court.

On June 3, 1924, the logging company owed the plaintiff supply company the amount of these two notes. This was then a past due indebtedness, being made up of a $250 past due promissory note and a past due balance on an account for goods purchased. After the incurring of all of this indebtedness, and prior to the making of these notes, Wood and Kahaley became president and secretary, respectively, of the logging company. A short time before the making of the notes, the president of the supply company asked Wood, manifestly as president of the logging company and not personally, to execute new notes to the supply company as new evidence of this whole indebtedness. Wood testified, in substance, that he objected to the execution of such notes, telling the president of the supply company that he would not sign any note rendering himself personally liable, and that the president of the supply company assured him that neither he nor Kahaley would be thereby subjecting himself to any personal liability by executing the logging company's note. They finally consented to so execute these notes as president and secretary of the logging company in the manner we have noticed. The president of the supply company testified, touching the negotiations

leading up to the making of the notes, in part, as follows:

"Q. Did you tell him whether or not he would be personally liable on the note? A. Never was brought up at all. I didn't ask him to endorse a note. Q. Did you say anything to him about his being liable personally? A. No, sir. Q. Well, what was said, if anything, about the matter? A. I told him I wanted a new note for what the company owed. Q. Now, did you have any conversation with Wood or other officer of the Taylor-Morrison Logging Company as to giving an extension of time to pay this? A. Well, that is what we took these notes for."

Another representative of the supply company, who later actually presented the notes to Wood and Kahaley already prepared for signing, testified:

"I told him [evidently meaning Wood] we wanted to use the notes for banking purposes."

Wood and Kahaley did not read the fine printed portion of the notes, manifestly assuming from what had been said by the president of the supply company and its other representative that the notes were being executed only as the notes of the logging company.

[1] We first notice the law touching the legal effect of the manner of signing the notes, as affecting the question of the personal liability of Wood and Kahaley thereon, apart from the words of the note which we have italicized embodied in the fine print. In *Liebscher v. Kraus,* 74 Wis. 387, 5 L. R. A. 496, decided in 1889, there was drawn in question the personal liability of the president of a corporation upon a promissory note signed as follows: "San Pedro Mining & Milling Company. F. Kraus, President." Following a review of authorities and holding that Kraus, the president so executing the promissory note of the corporation was not thereby rendered personally liable thereon, Justice Orton, speaking for the court, said:

"The principle of these authorities seems to be 'that if the agent sign the note with his own name alone, and there is nothing on the face of the note to show that he was acting as agent, he will be personally liable; but if his agency appears with his signature, then his principal only is bound.'

"Here the corporation could not sign its own name, and it is not otherwise shown on the face of the note than that Kraus signed the corporate name, and by adding the word 'President' to his own name he shows conclusively that as president of the corporation he signed the note, and not otherwise. Such is the natural and reasonable construction of these signatures, and so it would be generally understood. The affix, cashier, secretary, president or agent, to the name of the person sufficiently indicates and shows that such person signed the bank or corporate name, and in that character and capacity alone. The use of the word 'by' or 'per' or 'pro' would not add to the certainty of what is thus expressed. It is not common to use these words in commercial business. It is sufficiently understood that the paper is signed by the officer or agent named, and for the corporation."

This view of the law was adhered to where the same problem was presented, in each of the following later decisions: *American Nat. Bank v. Omaha Coffin Mfg. Co.*, 95 N. W. (Neb.) 672; *Myers v. Chesley*, 190 Mo. App. 371, 177 S. W. 326; *Spiller-Beall Co. v. Hirsch*, 18 Ga. App. 450, 89 S. E. 587; *New England Electric Co. v. Shook*, 27 Colo. App. 30, 145 Pac. 1002; Cook on Corporations, Vol. 4 (8th ed.), § 724. In all of these cases there was no "by" or "per" or other word between the signed corporate name and the signed name of its officer or officers.

In *Jump v. Sparling*, 218 Mass. 324, 105 N. E. 878, the problem was presented under somewhat different conditions. The signing of the note in question was as follows: "J. H. Sparling, Treas. Stratton Engine Co. David F. Burns, Pres. Stratton Engine Co.", the

name of the corporation not being otherwise mentioned either in the body of the note or in its signing. Holding that, under negotiable instrument act of Massachusetts, the note so signed became only the obligation of the corporation and not the personal obligation of either Sparling or Burns, Chief Justice Rugg, speaking for the court, said:

"Under the law previous to the enactment of the negotiable instruments act, the defendant corporation would not have been held on this note. It would have been not the note of the corporation, but simply the individual note of the two individuals who signed. *Davis v. England*, 141 Mass. 587, 6 N. E. 731; *Tucker Manuf. Co. v. Fairbanks*, 98 Mass. 101. A change in the law in this respect has been wrought by that act. R. L. c. 73, § 37, is as follows:

" 'Where the instrument contains, or a person adds to his signature, words indicating that he signs for or on behalf of a principal, or in a representative capacity, he is not liable on the instrument if he was duly authorized; but the mere addition of words describing him as an agent, or as filling a representative character without disclosing his principal, does not exempt him from personal liability.'

"These words plainly imply that if the person signing a promissory note adds to his signature words describing himself an agent or as occupying some representative position which at the same time discloses the name of the principal, he shall be exempted from personal liability, while if he omits the name of the principal, although adding words of agency, he will be held liable personally and the words of agency will be treated simply as *descriptio personae*. In this respect the common-law rule of this commonwealth whereby agents bind themselves by a form of signing a note such as the one at bar, even though acting with authority, *Haverhill Ins. Co. v. Newhall*, 1 Allen, 130, is abrogated. The agent now relieves himself from liability by a form of signature whereby he is described as agent of a disclosed principal."

The West Virginia supreme court of appeals in *First National Bank of Salem v. Jacobs,* 85 W. Va. 653, 102 S. E. 491, considered what was, in substance, the same problem, the signing to the note in question being "Winnie M. Jacobs, Exec. of Geo. M. Jacobs, deceased," and held to the same view of the law as the Massachusetts court, in the light of the same provision in the negotiable instrument act of West Virginia. Our negotiable instrument act reads, in Rem. Comp. Stat., § 3411 [P. C. § 4091], the same as the Massachusetts and West Virginia negotiable instrument acts as quoted in those decisions.

Our decision in *Daniel v. Glidden,* 38 Wash. 556, 80 Pac. 811, where the whole of the signing of the note in question was: "H. M. Glidden; Secy. Wm. H. Buttner, President," and where they were held personally liable because no corporation was named as the maker of the note, is not in conflict with the conclusion we here reach. Our decisions in *Toon v. McCaw,* 74 Wash. 335, 133 Pac. 469, L. R. A. (1915A) 590; *Way v. Lyric Theater Co.,* 79 Wash. 275, 140 Pac. 320; *Bank of California v. Starrett,* 110 Wash. 231, 188 Pac. 410, 9 A. L. R. 177; *Farmers State Bank of Newport v. Lamon,* 132 Wash. 369, 231 Pac. 952, are not in conflict with the conclusion we here reach. In each of the notes there in question, the corporation's name, signed by its officers, was followed by the signing of individual names without any designation of their having any official connection with the corporation. Such individuals so signing were held personally liable.

Thus we think it becomes plain that, looking alone to the manner of the signing of these notes, such signing evidences nothing more than a signing by and for the logging company, a corporation, and does not evidence the assuming of any obligation on the part of either Wood or Kahaley personally.

[2] It is strenuously contended in behalf of the supply company that, in any event, the words "each and every party signing this note as officer or agent of a corporation or copartnership also binds himself individually as principal," embodied in the notes here in question, rendered Wood and Kahaley, signing the notes as president and secretary, personally liable. We do not think it should be so held, in view of the circumstances here shown in connection with the execution of these notes. The president of the supply company plainly led Wood and Kahaley to understand that it was only the notes of the logging company as a corporation that were desired by the supply company. The notes were presented to Wood and Kahaley, made out on a blank prepared by the supply company in which was embodied this extraordinary provision, practically hidden and in fine print, strongly suggesting an intention on the part of the president of the supply company that the provision would be overlooked by whoever might sign for a corporation executing a note on such form. The testimony of the president of the supply company touching the negotiations leading up to the signing of the notes plainly indicates that neither he nor Wood nor Kahaley had any intention of the notes being other than the sole obligations of the logging company. Clearly, we think Wood and Kahaley were excusable for not so critically reading all the fine print in the notes as to notice this extraordinary provision therein.

[3] If the supply company is not guilty of fraud in so inducing Wood and Kahaley to so execute the notes, as the evidence rather strongly suggests, Wood and Kahaley's executor are in any event entitled to have the notes considered as reformed, by the elimination therefrom of this provision which it is

claimed renders them personally liable. Our practice being a code system, wherein law and equity remedies and defenses are capable of being fully administered in a single civil action, and this case having been tried by the court without a jury, we see nothing in the way of thus finally disposing of this case.

The judgment, in so far as it is against Wood and the executor of Kahaley's estate, is reversed.

MACKINTOSH, C. J., TOLMAN, BRIDGES, and ASKREN, JJ., concur.