[No. 10720–8–I.   Division One.   January 16, 1984.]

BEN HOLT INDUSTRIES, INC., *Appellant,* v. DAVID
A. MILNE, ET AL, *Defendants,* MILNE &
ASSOCIATES, INC., *Respondent.*

*Michael A. Patterson, Gail M. Lundgren,* and *Lee, Smart, Cook & Martin, Inc., P.S.,* for appellant.

*Zachery Mosner, Thomas N. Bucknell, Jr.,* and *Shulkin, Hutton & Bucknell,* for respondent.

RINGOLD, J.—This case presents issues concerning the validity of a defectively acknowledged lease and whether there was sufficient part performance to take the lease outside the statute of frauds. We conclude that there was sufficient part performance to obviate the statute of frauds, and reverse and remand for determination of damages.

The defendant, Milne and Associates,[1] rented office space from the plaintiff Ben Holt Industries (Holt) under a written 1–year lease in 1978. This lease was purportedly renewed for 5 years in a second written document dated February 5, 1979, signed and acknowledged as follows:

BEN HOLT INDUSTRIES, INC.
By /signed/_____
    Ben Holt    President
By /signed/_____
    Venda Holt    Secretary
On this day personally appeared before me Ben Holt and Venda E. Holt to me known to be the individuals described in and who executed the within and foregoing instrument and acknowledged that they signed the same

---

[1]For simplicity we will refer to the defendant as Milne.

as their free and voluntary act and deed, for the uses and purposes mentioned.

GIVEN under my hand and official seal this 5th day of February, 1979. /s/ Florence L. Mauceri/Notary Public.

Holt submitted post–trial affidavits by the notary, stating that she knew that Holt was an authorized signator on behalf of the corporation. The purported lease was also signed and acknowledged by David Milne as president of Milne and Associates. Milne stated in his deposition that he signed and acknowledged the document, intending to create a 5–year lease and believing that the lease was valid.

The rent under the second lease was higher than the amount due under the 1978 lease. Milne continued to occupy the premises and pay the increased rent for about a year. They then moved from the location without notice to Holt. Holt attempted to find tenants for the remaining 4 years of the lease term. The front portion of the premises was eventually rented, but the back portion remained vacant in spite of good faith efforts to find tenants. Holt then commenced this action seeking damages.

The trial court found that the lease was defectively acknowledged because the individual acknowledgment form was used by the lessor, instead of the corporate form specified in RCW 64.08.070. Under *Yukon Inv. Co. v. Crescent Meat Co.,* 140 Wash. 136, 248 P. 377 (1926), the lease was thus void. The court further found that the defective acknowledgment was adequately pleaded as an affirmative defense and that there was insufficient part performance to take the lease outside the statute of frauds. The court held that Milne was on a periodic tenancy, terminable by a month's notice, and awarded 1 month's rent as damages for the lack of notice. Holt assigns error to these findings and appeals from the judgment.

## DEFECTIVE ACKNOWLEDGMENT

Holt first argues that the trial court incorrectly applied the holding of *Yukon* in finding that the lease was defectively acknowledged. He argues that *Yukon* was modified

by the holding in *Bradley Distrib. Co. v. Seattle–First Nat'l Bank,* 34 Wn.2d 63, 208 P.2d 141 (1949), and that only substantial compliance with the statute is required under *Bradley* and under the express terms of RCW 64.08-.070. Holt interprets *Bradley* as holding that the elements of a corporate acknowledgment must be present to validate the instrument, not to validate the acknowledgment. He urges that, because the elements of the acknowledgment were established by the post–trial affidavit of the notary, the acknowledgment satisfies the statutory requirement.

Holt's argument misinterprets the holding in *Bradley* and the statutory requirements. RCW 64.08.070 states:

> Form of certificate for corporation. Certificates of acknowledgment of an instrument acknowledged by a corporation shall be in substantially the following form:
>
> . . .
>
> On this [date] before me personally appeared _____, to me known to be the (president, vice president, secretary, treasurer, or other authorized officer or agent, as the case may be) of the corporation that executed the within and foregoing instrument, and acknowledged said instrument to be the free and voluntary act and deed of said corporation, for the uses and purposes therein mentioned, and on oath stated that he was authorized to execute said instrument and that the seal affixed is the corporate seal of said corporation.

An earlier, similar version of the statute was interpreted in *Yukon Inv. Co. v. Crescent Meat Co., supra,* where the court found that use of the individual instead of the corporate acknowledgment form rendered an acknowledgment defective:

> The acknowledgment appears to be fatally defective. The statute . . . provides a form of acknowledgment for corporations. The form used in this case was that commonly provided for individuals, and lacks four essential elements of the statutory form for corporations: (1) fails to show that the person signing the mortgage was known to the notary to be an officer of the corporation which executed the mortgage; (2) that he acknowledged the same to be the free and voluntary act of the corporation; (3) that he was authorized to execute it on behalf of the

corporation; and (4) that the seal affixed was the corporate seal.

*Yukon,* at 139.

A similar result was reached in *Bank of Commerce v. Kelpine Prods. Corp.,* 167 Wash. 592, 10 P.2d 238 (1932), a case concerning a defectively acknowledged chattel mortgage. The absence of elements 2 and 3 above invalidated the acknowledgment and the instrument.

The acknowledgment here is the individual form condemned in *Yukon. Bradley Distrib. Co. v. Seattle–First Nat'l Bank,* 34 Wn.2d 63, 208 P.2d 141 (1949), relied on by Holt, does not overrule or significantly modify *Yukon. Bradley* merely dropped the requirement of a corporate seal. Holt mischaracterizes *Bradley* in stating that the first three elements are not important in determining the validity of the acknowledgment but only in determining the validity of the instrument. It is because those elements relate to the validity of the instrument that they are required to be stated in the acknowledgment. The "substantial compliance" required by *Yukon* and *Kelpine Products* dictates that the elements be in writing, affixed to the instrument.

█ Generally, a defective acknowledgment may not be "perfected" by parol evidence. In *Forrester v. Reliable Transfer Co.,* 59 Wash. 86, 95, 109 P. 312 (1910), the court found a lease for over 1 year invalid, even between the parties, because it was not acknowledged by the lessor. The lessee's acknowledgment was not sufficient. The court refused to accept parol evidence that the lease had been acknowledged at the time it was signed. Similar results were reached in *Smith v. Allen,* 78 Wash. 135, 138 P. 683 (1914) (a chattel mortgage), and *Stetson & Post Mill Co. v. McDonald,* 5 Wash. 496, 32 P. 108 (1893) (a lien notice). The post–trial affidavits of the notary offered by Holt are not an adequate substitute for the required acknowledgment.

Application of the analysis of *Yukon* and *Kelpine Products* requires that the acknowledgment here be held to be

invalid because the individual rather than the corporate acknowledgment form was used.

## PLEADING AFFIRMATIVE DEFENSE

Holt next contends that Milne's answer did not adequately plead the affirmative defense of defective acknowledgment and is thus barred under CR 8 and CR 12. Holt argues that the answer stated only that the parties never "perfected" a written lease and that the statute of frauds barred the suit. Holt claims that "perfection" raises Uniform Commercial Code article 9 issues, not the statute of frauds, because lack of acknowledgment does not encompass the same elements as does the statute of frauds.

Milne's answer states: "For affirmative defenses, defendants state plaintiff's complaint is barred by the statute of frauds, because the plaintiff and defendant never perfected a written lease." Stating that the lease was never perfected and raising the statute of frauds is sufficient compliance with CR 8(c). In this fact situation, it is because there is not an effective acknowledgment that the statute of frauds comes into play. The purpose of CR 8(c) is to prevent unfair surprises during trial, and to allow the plaintiff time to prepare the case. *Mahoney v. Tingley,* 85 Wn.2d 95, 100, 529 P.2d 1068 (1975). The rule will not be interpreted in a "rigid and mechanical way." *Mahoney,* at 101.

Holt had a copy of the written lease. An "unperfected" lease must be one which lacks a necessary element of perfection, *e.g.,* a writing, a signature, or an acknowledgment. It is unlikely that Holt was misled by the answer into thinking that the defendants were arguing that there was no lease, or that the lease was unsigned. There was no element of "surprise" and the defense was adequately pleaded.

## PART PERFORMANCE

The final issue is whether there is sufficient part performance to take the lease outside the statute of frauds. Holt argues that possession and payment of rent for a year is sufficient part performance where, as here, the terms of the lease are clear and undisputed. Holt further contends

that the purpose of the statute of frauds is to prevent fraud, not to perpetuate it and that the purpose of the statute is not served by invalidating the lease. In response, Milne cites *Labor Hall Ass'n v. Danielsen,* 24 Wn.2d 75, 163 P.2d 167, 161 A.L.R. 1079 (1945) for the argument that more than payment of rent is required to utilize the doctrine of part performance. Milne claims the tenant or lessor must make improvements or take some actions in reliance on the lease that create an equitable estoppel.

While part performance has long been recognized as sufficient to take a defective lease outside the statute of frauds, there is some conflict in the case law over what constitutes sufficient part performance. Professor Stoebuck summarized the general rule as:

> More than possession alone is required to establish an estoppel or part performance. Nor is it enough merely to add the payment of agreed rental installments . . .
>
> . . .
>
> . . . It seems that the court requires two basic elements: First, acts evincing a leasehold of a term beyond a periodic tenancy and, second, acts making it inequitable not to enforce the lease.

Stoebuck, *The Law Between Landlord and Tenant in Washington,* 49 Wash. L. Rev. 291, 321–23 (1974). Generally, the cases require some conduct by the tenant or landlord beyond possession and payment of rent. *See, e.g., Priestly Mining & Milling Co. v. Lenox Mining & Dev. Co.,* 41 Wn.2d 101, 247 P.2d 688 (1952) (built camp and performed work); *Franklin v. Fischer,* 34 Wn.2d 342, 208 P.2d 902 (1949) (completely performed oral agreement); *Rowland v. Cook,* 179 Wash. 624, 38 P.2d 224, 101 A.L.R. 180 (1934) (built improvements for tenant). No such acts were performed in the instant case.

There is, however, a second line of cases in which long acquiescence under the terms of a lease, without more, is said to be sufficient to avoid the statute of frauds requirement. *See* Stoebuck, at 323–24. In *Metropolitan Bldg. Co. v. Curtis Studio,* 138 Wash. 381, 244 P. 680 (1926), the

court enforced the notice provisions of an unacknowledged lease because the parties had "treated it as a measure of their rights" for 7 years. The court stated that the unacknowledged lease "is voidable rather than void, and the parties thereto may by their acts waive their right to avoid it. . . . [the] long acquiescence in the terms of the lease [works an estoppel]." *Metropolitan,* at 387.

More recently, this court upheld a defective lease under which the tenant had been paying rent for 4 years. *Stevenson v. Parker,* 25 Wn. App. 639, 644, 608 P.2d 1263 (1980). The court stated that the "long acquiescence" alone was sufficient part performance, but there were also improvements made by the tenant in reliance on an option to purchase the property. The *Stevenson* court also discussed cases holding that the statute of frauds should not be applied where inequity would result. *Stevenson,* at 643.

■■ *Miller v. McCamish,* 78 Wn.2d 821, 827, 479 P.2d 919 (1971), relied on by the *Stevenson* court, rejected the old arguments advanced to support rigid application of the statute of frauds. The court stated that statutory interpretation is the appropriate basis for resolving statute of frauds issues, and looked to the legislative intent behind the enactment of RCW 19.36.010 and RCW 64.04.010. The court stated that

> The clear purpose and intent behind these statutes of frauds is the prevention of fraud. To apply these statutes in such a manner as to promote and encourage fraud would be to *defeat the clear and unambiguous intent of the legislature in their enactment.*

*Miller,* at 828. The *Miller* court went on to say that "the court's overriding concern is precisely directed toward and concerned with a quantum of proof certain enough to remove doubts as to the parties' oral agreement . . .". (Italics omitted.) *Miller,* at 828–29.

The necessary proof requires, first, that the agreement be proven by clear and unequivocal evidence. *Miller,* at 829. This requirement is met here. The written agreement was admitted into evidence and both parties testified that they

signed the agreement and intended to create a lease. The second requirement is that the acts relied upon to establish part performance must "point to the existence" of the claimed agreement. Possession and payment of rent, in this case, point to the existence of an agreement. The original, 1–year lease of the premises required monthly rental payments of $633. The second attempted lease increased the rent to $1,084. Milne paid this increased rent for nearly a year. Milne did not, prior to moving out, notify Holt that they believed that they were on a month to month tenancy. In fact, Milne testified in deposition that he believed that he was signing a lease and intended to create a lease. Viewed objectively, until Milne vacated the premises the parties acted as lessor and lessee under the lease, treating the lease as a "measure of their rights . . .". *Metropolitan,* at 387. There was sufficient acquiescence under the terms of the lease to invoke the doctrine of part performance.

In *Miller,* the court said that enforcement of the statute of frauds in situations where the above requirements are met "*would be to defeat the very purpose for which it was enacted—i.e.,* the prevention of fraud arising from *uncertainty* inherent in oral contractual undertakings." *Miller,* at 829. Similarly, the application of RCW 64.04.010 in this situation would defeat the purpose behind the enactment. The parties intended to create a lease. There is no uncertainty inherent here. Allowing a technical flaw in the acknowledgment to invalidate the lease does not prevent fraud or uncertainty, rather, it enhances it.

We, therefore, find that there was sufficient part performance of the lease to avoid the statute of frauds requirement and remand to the trial court for a determination of damages.

CORBETT, A.C.J., and SCHOLFIELD, J., concur.