[No. 62931-0-I.   Division One.   April 12, 2010.]

LOSH FAMILY, LLC, *Respondent*, v. ILIA KERTSMAN ET AL., *Respondents*, BAZA INTERNATIONAL, LLC, ET AL., *Defendants*, WILLIAM GROVER ET AL., *Appellants*.

*Matthew F. Davis*, for appellants.

*Jeffrey P. Downer*, *Michelle A. Corsi*, and *Stefanie L. Peppard* (of *Lee Smart PS*), for respondents.

¶1 BECKER, J. — William Grover contends that only his limited liability company is bound by an assignment of lease Grover signed as a member of the company. We conclude the form of his signature does not alter the unambiguous language of the assignment referring to Grover's individual liability. We also conclude that the lease, though technically invalid, is removed from the statute of frauds because Grover acted upon it as a lease rather than as a month-to-month tenancy.

¶2 Respondent Losh Family LLC owned the warehouse property in question. J. Brian Losh leased the premises to Ilia Kertsman in November 2004 for $4,150 per month in rent. The five year term of the lease covered September 2003 to August 2008. The lease obligated Kertsman to pay a share of property taxes, insurance, and utilities: "Yearly summary costs will be provided as a base of payment for the sixty-eight percent (68%) triple net costs to be paid in monthly payments." Kertsman operated his international food business, Baza International LLC on the premises.

¶3 In November 2005 appellant William Grover and his wife, Teresa Grover, formed Grover International LLC, a limited liability company. They bought Kertsman's business, Baza International, in December 2005. Kertsman assigned the lease of the business premises to "William and Teresa Grover as individuals, dba Grover International, LLC." Grover signed the assignment as, "Grover International, LLC by William Grover member." Losh also signed the assignment, consistent with a lease provision requiring

his assent for Kertsman to assign the lease. Grover International, operated by Grover, continued the food business on the premises and made lease payments from Grover International's account.

¶4 In February 2006, Grover listed Grover International for sale, including the food business that was still known as Baza International. Grover hired a real estate agent to list the sale. The listing agreement stated that Baza International's premises were leased "by seller" and that seller would "assign the lease to buyer at closing." Both William and Teresa Grover signed the listing agreement and a listing input sheet that advertised Baza International's premises as a corner location with a "more than 5 years" lease, "assignable" to the purchaser.

¶5 In late March 2006, Grover sold Grover International and all its assets to Yuri Sushkin and his wife, Tatyana Rubtsova. Grover and Sushkin signed a separate agreement in which Sushkin assumed the lease.

¶6 Sushkin paid on the lease through October 2006. In late October, Sushkin vacated the premises. At the end of November, Losh served Kertsman, Grover, and Sushkin with a notice of default and a demand for payment. They did not respond. Losh reclaimed the premises. He obtained a new tenant in October 2007.

¶7 Losh filed this suit in January 2008 to recover damages for breach of the lease from Kertsman, Grover, Sushkin, Baza International, and Grover International. Grover and Kertsman cross-claimed against each other. Sushkin defaulted. The trial court granted Losh's motion for summary judgment, holding the defendants jointly and severally liable on the lease. The court also granted Kertsman's motion for summary judgment against Grover. Losh was awarded attorney fees under a provision of the lease. Grover was ordered to indemnify Kertsman for any payment made on the $74,670 owed on the lease and for his share of Losh's attorney fees. Grover's claims against Kertsman were dismissed, and Kertsman was awarded

attorney fees under a provision in the agreement between Grover and Kertsman.

¶8 Grover appeals the orders granting summary judgment to Losh and Kertsman. We review a grant of summary judgment de novo. *Wilson Court Ltd. P'ship v. Tony Maroni's, Inc.*, 134 Wn.2d 692, 699, 952 P.2d 590 (1998).

## GROVER'S PERSONAL LIABILITY

¶9 The assignment of the lease by Kertsman to Grover referred five different times to "William and Teresa Grover as individuals, dba Grover International, LLC" as party to the agreement. However, the signature for the assignee was "Grover International, LLC by William Grover member." Grover argues that by using an entity signature, he and his wife avoided personal liability. We disagree.

¶10 This is not a case like *Union Machinery & Supply Co. v. Taylor-Morrison Logging Co.*, 143 Wash. 154, 254 P. 1094 (1927), relied on by Grover. In *Union Machinery*, the officers of a logging company had signed a promissory note in their official capacities. They had been assured that they would not be subjected to personal liability by signing the note in that way. Yet the supply company later attempted to impose personal liability on them, based on a provision in the body of the note stating, in fine print, that every party who signed as an officer or agent " 'also binds himself individually as principal.' " *Union Machinery*, 143 Wash. at 161. Under the circumstances, the court found that the note should be reformed to eliminate the provision purportedly creating personal liability. The circumstances here are not analogous.

¶11 More apt is *Key v. Cascade Packing Inc.*, 19 Wn. App. 579, 576 P.2d 929 (1978). Cascade Packing owed money to its financiers. The financiers asked Clyde Hovick, Cascade Packing's president, for a personal guaranty. He wrote them a letter unambiguously promising a personal guaranty, but he signed as president of Cascade Packing. The court held him personally liable:

In this case the defendant sent his letter in answer to a request from the plaintiffs for a personal guaranty, and they relied on it as such. He used the first person to state the guaranty. The cases do not support his contention that, because his corporate title was affixed, a completely clear document was rendered ambiguous. The cases require a finding of ambiguity only when reasonable inferences could support another interpretation.

*Key*, 19 Wn. App. at 582-83.

¶12 *Key* was an application of a long established principle that where an agreement contains language binding the individual signer, "additional descriptive language added to the signature does not alter the signer's personal obligation." *Tony Maroni's*, 134 Wn.2d at 700, 704. That rule applies here. If Grover did not want to be personally bound on the assignment, he should have insisted on the elimination of the language within the agreement that designated the assignee as "William and Teresa Glover as individuals." The trial court did not err in holding the Grovers personally liable.

## STATUTE OF FRAUDS

¶13 Grover contends the underlying lease was never enforceable as more than a month-to-month lease because it violated the statute of frauds.

¶14 Every contract or agreement involving a sale or conveyance of platted real property " 'must contain, in addition to the other requirements of the statute of frauds, the description of such property by the correct lot number(s), block number, addition, city, county, and state.' " *Key Design, Inc. v. Moser*, 138 Wn.2d 875, 882, 983 P.2d 653, 993 P.2d 900 (1999) (quoting *Martin v. Seigel*, 35 Wn.2d 223, 229, 212 P.2d 107 (1949)). The underlying lease from Losh to Kertsman was invalid under the statute of frauds because the legal description did not specify the particular plat or addition:

Certain Premises situated in the City of Renton, County of King, Washington described as follows:

Approximately 10,000 square feet on the ground floor located on the southerly section of Lots 4, 5, 6, Block 20 of the City of Renton as recorded in Plats, Records of King County.

¶15 A legal description is insufficient if the court needs to resort to extrinsic evidence to definitively locate the property. *Key Design*, 138 Wn.2d at 881. Losh and Kertsman fail to show how a court could definitively locate the leased premises without resorting to extrinsic evidence to identify the plat or addition in which it is located. Kertsman argues that Grover ratified the lease by admitting to the legal description in Losh's complaint. But there is no judicial admissions exception to the statute of frauds. *Key Design*, 138 Wn.2d at 884-88.

¶16 A lease that is deficient under the statute of frauds for lack of a legal description may nevertheless be saved by part performance. *See, e.g., Pardee v. Jolly*, 163 Wn.2d 558, 567-68, 182 P.3d 967 (2008). Part performance, originally an equitable remedy, can also sustain actions at law for damages when necessary to give effect to the legislative purpose of the statute of frauds. *Miller v. McCamish*, 78 Wn.2d 821, 826-29, 479 P.2d 919 (1971). The purpose of the statute of frauds is "the prevention of fraud arising from uncertainty inherent in oral contractual undertakings. Where no uncertainty exists in the oral agreement, the reason for the statute's application similarly disappears." *Miller*, 78 Wn.2d at 829 (emphasis omitted). Therefore, "the court's overriding concern is precisely directed toward and concerned with a quantum of proof certain enough to remove doubts as to the parties' oral agreement." *Miller*, 78 Wn.2d at 828-29 (emphasis omitted). Under *Miller*, there must be clear and unequivocal evidence which leaves no doubt as to the terms, character, or existence of the contract. *Miller*, 78 Wn.2d at 829.

¶17 Three factors are typically considered in determining whether there is sufficient evidence of part performance: (1) delivery and assumption of actual and exclusive possession; (2) payment or tender of consideration; and (3) the making of permanent, substantial, and valuable im-

provements, referable to the contract. *Pardee*, 163 Wn.2d at 568. These three factors serve an evidentiary function allowing the court to be certain the contract existed and its terms. *Miller*, 78 Wn.2d at 826. The making of substantial and valuable improvements is the strongest factor, *Powers v. Hastings*, 93 Wn.2d 709, 721, 612 P.2d 371 (1980), while payment alone is the weakest. *Wagers v. Associated Mortg. Investors*, 19 Wn. App. 758, 766, 577 P.2d 622 (1978); *see Berg v. Ting*, 125 Wn.2d 544, 886 P.2d 564 (1995). "Generally, the cases require some conduct by the tenant or landlord beyond possession and payment." *Ben Holt Indus., Inc. v. Milne*, 36 Wn. App. 468, 474, 675 P.2d 1256 (1984). "The facts must show the parties acted upon the instrument as a lease." *Tiegs v. Watts*, 135 Wn.2d 1, 16, 954 P.2d 877 (1998).

¶18 Grover denies that he personally took possession or paid on the lease. Viewing the facts and inferences in Grover's favor on summary judgment, we accept as true his assertion that only Grover International conducted business on the leased premise, and the rent was paid only from Grover International's account. But as discussed above, the lease was assigned to Grover as an individual doing business as Grover International. For purposes of the lease, he and his business, Grover International, were one and the same. We conclude the factors of possession and payment are present.

¶19 As to the third factor, there is no evidence that Grover made substantial improvements to the property. Losh contends it is enough that the underlying lease contained a provision obligating the tenant to contribute to the cost of installation of an air conditioning system and a new carpet for the office. Losh relies on the following sentence in *Pardee*, 163 Wn.2d at 568: "Third, the contract provides Pardee with the right to improve the property and testimony established that Pardee made permanent, substantial, valuable improvements to the house." But Pardee did not merely agree to make improvements; he actually made them. Losh cites no authority indicating that merely

agreeing to make improvements is sufficient to establish part performance. And there is no evidence that Grover bound himself to make improvements other than the lease itself, the instrument that Grover is trying to avoid.

¶20 Nevertheless, we conclude that other actions by Grover were sufficient to remove any uncertainty that he was a tenant under the five year lease, as opposed to holding only a month-to-month tenancy. Specifically, Grover paid rent that was calculated on an annual basis under the triple net provisions of the lease. He contracted as an individual with Sushkin to allow Sushkin to assume the lease. And during his later effort to sell his company, he represented that he had an assignable five year lease.

¶21 Our conclusion is supported by *Ben Holt Industries, Inc.* Ben Holt Industries Inc. leased commercial space to Milne for one year and then entered into a five year lease with Milne at a higher rent. Milne paid the higher rent for about one more year before vacating the premises. Holt Industries sued Milne for breach of lease. The second lease was void under the statute of frauds because Ben Holt's acknowledgement of signature to the notary was individual rather than corporate. Finding insufficient part performance to save the lease, the trial court held that Milne was on a periodic tenancy, terminable by one month's notice.

¶22 On appeal, this court reversed. We concluded that under *Miller*, the existence of improvements was not essential to proving part performance so long as the acts relied upon to prove part performance unmistakably point to the existence of the claimed agreement. *See Miller*, 78 Wn.2d at 829. The factor that most clearly pointed to the existence of the five year lease in *Ben Holt Industries, Inc.* was Milne's record of paying the higher rent and treating it as a measure of his rights, thus demonstrating his acquiescence to the terms of the lease. *Ben Holt Indus., Inc.*, 36 Wn. App. at 476.

¶23 The present case is similar. First, there is no uncertainty as to the existence and terms of the lease or the assignment by Kertsman to Grover. *See Ben Holt Indus.*,

*Inc.*, 36 Wn. App. at 476; *see also Stevenson v. Parker*, 25 Wn. App. 639, 643, 608 P.2d 1263 (1980) (absence of dispute about the terms of the lease dispelled the potential for fraud that necessitates application of the statute of frauds in cases involving oral agreements); *cf. Granquist v. McKean*, 29 Wn.2d 440, 187 P.2d 623 (1947) (possession, payment, and minor repairs by tenant did not remove an alleged oral agreement for purchase of a house from the statute of frauds where the landlord denied the existence of the agreement).

¶24 Next, and more significant, is the fact that Grover and Losh both acted upon the underlying instrument as a lease when they signed the "Assignment of Lease" between Kertsman and Grover. Grover took possession and made payments consistent with the lease. His acquiescence to its terms is shown in part by the fact that in addition to the monthly rent, he paid triple net costs. These costs, though paid monthly, were assessed annually, thus Grover's payment of them was consistent with his status as a tenant under a long term lease rather than a month-to-month tenancy. By signing an agreement allowing Sushkin to assume the lease and listing the property as being associated with a five year, assignable lease, Grover further demonstrated that he regarded the lease as valid. These acts would not have been necessary if all Grover had was a month-to-month tenancy.

¶25 We conclude, as did the court in *Ben Holt Industries, Inc.*, that there was sufficient acquiescence by Grover under the terms of the lease to invoke the doctrine of part performance and remove the lease from the statute of frauds.

## ATTORNEY FEES

¶26 Grover assigns error to the trial court's award of attorney fees to Losh and Kertsman. We do not review this claim because he has not argued it. RAP 10.3(a)(6).

¶27 Both Losh and Kertsman request attorney fees on appeal under CR 11, RAP 18.9, and RCW 4.84.185 for

defending a frivolous appeal. The signature issue is essentially frivolous, but the part performance issue is debatable, and therefore we deny this request.

¶28 The agreement between Kertsman and Grover whereby Grover purchased Baza International provides that if buyer or seller "institutes suit concerning this Agreement, the prevailing party is entitled to reasonable attorneys' fees and expenses." Grover instituted a cross claim against Kertsman concerning that agreement, but on appeal Grover does not raise any issues concerning it. Because Kertsman has not prevailed on appeal with respect to that agreement, his request for fees on appeal based on that provision is denied.

¶29 Losh is entitled to attorney fees on appeal under a provision in the lease that mandates fees for the lessor in the event that he brings a suit and prevails against the lessee for breach of the lease.

¶30 Affirmed. Attorney fees on appeal are awarded to Losh against Grover.

Cox and ELLINGTON, JJ., concur.