FILED
COURT OF APPEALS DIV I
STATE OF WASHINGTON

2013 OCT 28 AM 10: 35



# IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

| | |
|---|---|
| SEAWEST INVESTMENT ASSOCIATES LLC, a Washington Limited Liability Company, | No. 69305-1-I |
| | DIVISION ONE |
| Appellant, | |
| v. | |
| GEORGE CHARLES and WENDY CHARLES and the marital community composed thereof, SAM DIBELLO and RENEE DIBELLO and the marital community composed thereof, JILL JENSEN and JEREMY AMES and the marital community composed thereof, EMO ROWE and CAT ROWE and the marital community composed thereof, and NWREA, LLC, a Washington limited liability company, | UNPUBLISHED OPINION |
| Respondents. | FILED: October 28, 2013 |

SPEARMAN, A.C.J. — The trial court granted summary judgment to the respondents in an action for past due rent, common area maintenance charges, and late fees under a lease agreement with landlord, Seawest Investment Associates LLC. Finding that genuine issues of material fact exist with respect to the respondents' contractual obligations under the amendment to the lease, we reverse and remand for further proceedings consistent with this opinion. We also deny Seawest's request for an award of attorney fees and costs on appeal.

## FACTS

The parties to this appeal are George and Wendy Charles, Sam and Renee DiBello, Jill Jensen, Jeremy Ames, and Emo and Cat Rowe (the Members), a limited liability corporation formed by the Members, NWREA, LLC (NWREA) respondents, and Seawest Investment Associates, LLC (Seawest) appellant. In 2007, the Members negotiated for the lease of office space owned by Seawest. Representing Seawest in the negotiations was its principal, Massoud M. Aatai.

During the course of negotiations, Aatai prepared the written lease agreement which is the subject of this litigation (the Lease). The Lease, which was for a term of five years, contained a provision that required that negotiations be concluded and the Lease "executed" by all parties by a certain date and time. Section 1.2 of the Lease provides in part:

> LEASE AND RENT COMMENCMENT: This lease will become null and void unless it is executed by all parties by 5 p.m. September 26, 2007. Lease Commencement shall be upon mutual execution of this lease agreement . . . .

Clerk's Papers (CP) at 34.

It is undisputed that the Members' signatures, acknowledged by a notary, were affixed to the Lease, before 5:00 p.m. on September 26, 2007. The signature of Aatai, who signed on behalf of Seawest, is also dated September 26, 2007. However, it is uncontested that Aatai's signature was not acknowledged by a notary until the following day, September 27, 2007. There is also no dispute that for nearly two years thereafter, the Members paid rent, tenant improvement charges, common area maintenance (CAM) fees, and all

other payments specified by the Lease with checks drawn on the NWREA operating account.

In May 2009, the Members requested a reduction in rent. Seawest offered to reduce the monthly payment immediately due, with the shortfall accumulated and payable at the end of the Lease, subject to an interest rate of eight percent per annum. This offer was memorialized in a document titled "Amendment to the Lease dated September 10, 2007 between Seawest Investment Associates, LLC, (Landlord) and Keller Williams Realty Kirkland (Tenant)" (the Amendment).[1] The Amendment provided, in part:

> The Guarantors[2] subject to the original lease will be subject to this amendment with their signatures provided below. Except to the extent that this amendment modifies the original lease, all terms and conditions of the original lease shall remain in force.

CP at 568-69. The Amendment was signed on May 8, 2009 by the Members and Aatai. None of the signatures was acknowledged.

On October 5, 2010, George Charles, emailed Aatai explaining that NWREA could not make the rent payments "owed under the Lease." CP at 436. In the email, Charles requested a renegotiation of the rent obligation or consent to an assignment of NWREA's "interest in the Lease" as required by "Section 21.1 of the Lease." Id. Seawest declined to offer further relief and instead

---

[1] The September 10, 2007 date referenced in the Amendment's title appears to be a drafting error on the part of Aatai. It is uncontested that the document is meant to amend the Lease at issue in this case.

[2] In addition to the Lease, each of the Members signed personal guaranty agreements in which they agreed to act as "guarantors" for the obligations of the "tenant" for the first three years of the five-year term. CP at 560-63.

3

initiated this lawsuit, in which it claims back rent, CAM charges, and late fees for the period of October 2010 to March 2012.

On May 22, 2012, the Members filed the motion for summary judgment at issue in this appeal.[3] The Members argued that Seawest's claim was barred by Seawest's failure to satisfy a condition precedent to the formation of the Lease, i.e., that Seawest had failed to timely execute the Lease as required by Section 1.2. On June 29, 2012, the trial court heard oral argument on the motion. Subsequently, an order on supplemental briefing was issued in which the trial court solicited the parties' input on "whether Seawest ha[d] made a showing sufficient to survive a summary judgment establishing that the [L]ease was executed" timely under Section 1.2. CP at 764-66. On August 10, 2012, the trial court entered a final order granting the "defendants'" motion for summary judgment, dismissing Seawest's claims against "defendants" with prejudice, and ordering judgments against Seawest for attorney fees and costs. Final judgments were entered on September 6, 2012; the respondents were awarded attorney fees. Seawest appeals.

DISCUSSION

Summary Judgment

Seawest contends that the trial court erred because it improperly placed the burden of proof on Seawest, the non-moving party, at summary judgment.

---

[3] The early stages of this litigation were dominated by a series of cross-motions for summary judgment related to the identity of the tenant. The trial court rejected both Seawest's and the Members' motions, finding that factual disputes concerning the intention of the parties at the time the Lease was signed precluded summary judgment for all parties. Thereafter, NWREA was joined as a defendant in the lawsuit.

Seawest also argues that summary judgment was precluded because it successfully raised genuine issues of material fact regarding the respondents' contractual obligations, in particular under the Amendment. We agree with the latter contention and reverse.[4]

We review summary judgment decisions de novo. Ranger Ins. Co. v. Pierce County, 164 Wn.2d 545, 552, 192 P.3d 886 (2008). Summary judgment is proper if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. CR 56(c). A genuine issue of material fact exists if "reasonable minds could differ on the facts controlling the outcome of the litigation." Ranger Ins. Co., 164 Wn.2d at 552. When determining whether an issue of material fact exists, the court must construe all facts and inferences in favor of the nonmoving party. Id.

Summary judgment is subject to a burden-shifting scheme. Id. The initial burden to show the nonexistence of a genuine issue of material fact is on the moving party. Id; see also Vallandigham v. Clover Park School Dist. No. 400, 154 Wn.2d 16, 26, 109 P.3d 805 (2005). For example, a defendant may move for summary judgment by showing that there is an absence of evidence to support the plaintiff's case. Sligar v. Odell, 156 Wn. App. 720, 725, 233 P.3d 914 (2010), review denied, 170 Wn.2d 1019, 245 P.3d 772 (2011) (citing Young v. Key Pharm., Inc., 112 Wn.2d 216, 225 n.1, 770 P.2d 182 (1989) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986))). Once this

---

[4] Seawest also asserts that the respondents waived the right to enforce Section 1.2 of the Lease, that they are equitably estopped from denying the Lease is enforceable, and that the trial court erred in *sua sponte* granting summary judgment to NWREA, LLC, which neither moved for summary judgment nor joined in the Members' motions. Because we reverse on other grounds, we do not reach these issues.

initial showing is made, the inquiry shifts to the plaintiff to "make a showing sufficient to establish the existence of an element essential to [its] case." Id. at 725 (citing Celotex, 477 U.S. at 322).

When a party brings an action to enforce a contract, proof of satisfaction of all conditions precedent contained in the contract is an essential element of the case. See Ross v. Harding, 64 Wn.2d 231, 240-41, 391 P.2d 526 (1964). "That is to say, a breach by a plaintiff of a material condition precedent relieves a defendant of liability under a contract." Id. (citing RESTATEMENT (SECOND) OF CONTRACTS § 395 at 746; 3 SAMUEL WILLISTON & GEORGE J. THOMPSON, A TREATISE ON THE LAW OF CONTRACTS § 674 (rev. ed. 1936); 6 ARTHUR LINTON CORBIN, CORBIN ON CONTRACTS § 1252, at 2 (1951); Atkinson v. Thrift Super Markets, Inc., 56 Wn.2d 593, 594, 354 P.2d 709, 710 (1960)).

Seawest first contends that the trial court improperly shifted the burden on the summary judgment motion to it, the nonmoving party. The claim is without merit. By its own terms, the Lease, drafted by Seawest, explicitly stated that it would become "null and void unless it is executed by all parties by 5 p.m. September 26, 2007." CP at 34. The Members argued on summary judgment that timely execution of the Lease by all parties was a condition precedent to formation of a valid lease agreement and that in the absence of evidence to show the condition was met, the Lease was void. The Members supported their motion with undisputed evidence that Aatai's signature on the Lease was not acknowledged by a notary until September 27, 2007, and that Aatai had also stated under oath on several occasions that the Lease was entered into "on or

about September 27, 2007."[5] On these facts, the trial court reasonably concluded that the Members had met their initial burden of establishing the absence of a material fact regarding Seawest's breach of a material condition precedent to the formation of the Lease. The trial court's inquiry to the parties, upon which Seawest's contention is based, properly reflected that the burden had shifted to Seawest to demonstrate the existence of a disputed material fact on this issue in particular or, more broadly, on the issue of whether an enforceable agreement existed between the parties. Sligar v. Odell, 156 Wn. App. at 725. There was no error.

The Timeliness of the Execution of the Lease

Seawest next asserts that the trial court erred when it determined there were no material factual disputes about whether it executed the Lease in compliance with Section 1.2. It argues that the trial court failed to view Aatai's testimony that he timely signed the Lease on September 26 in the light most favorable to Seawest, the nonmoving party. The argument is unpersuasive. Whether Aatai signed the lease on September 26 is only material if his signature alone is sufficient to constitute "execution" of the Lease. The trial court correctly concluded that it did not.

To *execute* means "[t]o make (a legal document) valid by signing; to bring (a legal document) into its final, legally enforceable form . . . ." BLACK'S LAW DICTIONARY 649 (9th ed. 2009). Similarly, *execution* is defined as "2. Validation of

---

[5] See e.g., Declaration of Massoud M. Aatai in Support of Seawest's Cross-Motion for Summary Judgment; Declaration of Massoud M. Aatai in Opposition to Charles' Motion for Summary Judgment; Supplemental Declaration of Massoud M. Aatai in Support of Plaintiff Seawest Investment Associates L.L.C.'s Opposition to Charles', Dibellos' and Rowes' Motion for Summary Judgment.

a written instrument, such as a contract or will, by fulfilling the necessary legal requirements . . . ." Id. at 650. These definitions support the proposition that *execution*, as distinguished from *signing*, is the act of bringing legal validity to a document, rather than merely affixing a name to it.[6]

Additionally, in order to be valid in Washington, leases for a fixed term over one year must be in writing with the landlord's acknowledged signature. RCW 64.04.010, .020; Haggen v. Burns, 48 Wn.2d 611, 613-14, 295 P.2d 725 (1956) (an unacknowledged lease for a term exceeding one year creates only a tenancy from rent period to rent period); Labor Hall Ass'n v. Danielsen, 24 Wn.2d 75, 93, 163 P.2d 167 (1945) (an unacknowledged lease is void in so far as the contemplated term is concerned). Since an unacknowledged signature is insufficient to render a multi-year lease valid, it is also insufficient to render the lease executed. Here, the Lease was for a term of five years. It is undisputed that Aatai's signature was not acknowledged until September 27, 2007, after the deadline set out in Section 1.2. Thus, even if there is some dispute about whether Aatai signed the Lease before the deadline, it is a dispute about an immaterial fact that could not defeat the Members' summary judgment motion. The trial court did not err.

---

[6] See also Northwest Steel Rolling Mills v. Commissioner of Internal Revenue, 110 F.2d 286, 290 (9th Cir. 1940) (quoting 23 Corpus Juris 278) ("The words 'execute', 'executed' and 'execution' when used in their proper sense, convey the meaning of carrying out some act or course of conduct to its completion. Thus when the terms are applied to a written instrument, they include the performance of all acts...necessary to render it complete as an instrument importing the intended obligation, of every act required to give the instrument validity or to carry it into effect or to give it the forms required to render it valid.'").

## The Amendment

Seawest next contends that even if the original Lease was void, there are disputed issues of material fact as to whether "the parties' written Amendment to the Lease incorporated the terms of the original Lease and bound the parties." Appellant's Reply Brief at 2. We agree.

In Washington, a subsequent contract made by the same parties and covering the same subject matter has the legal effect of rescinding, and becoming a substitute for, the earlier contract. A substituted contract, or novation, "'is a new contractual relation. It is based upon a new contract by all the parties interested. It must have the necessary parties to the contract, a valid prior obligation to be displaced, a proper consideration, and a mutual agreement.'" MacPherson v. Franco, 34 Wn.2d 179, 182. 208 P.3d 641 (1949), (quoting Sutter v. Moore Inv. Co., 30 Wash. 333, 70 P. 746 (1902)). Here, Seawest has offered evidence of a mutual agreement to the Amendment by the necessary parties; a valid prior obligation as a result of the month to month tenancy created by the failed lease; and proper consideration when the Members promised to pay interest on the deferred rental payments and Seawest agreed to forgo its right to demand immediate payment of the full amount owed or vacation of the premises.

The Members and NWREA argue that even if the Amendment constitutes a new agreement between the parties, it is unenforceable under the statute of frauds because the agreement is for a term exceeding one year and none of the signatures to the agreement was acknowledged. But, Seawest correctly responds that the doctrine of part performance allows courts to enforce a lease

that does not satisfy the statute of frauds if equity and justice so require. Miller v. McCamish, 78 Wn.2d 821, 479 P.2d 919 (1971); Losh Family, LLC v. Kertsman, 155 Wn. App. 458, 228 P.3d 793 (2010); Ben Holt Ind., Inc. v. Milne, 36 Wn. App. 468, 675 P.2d 1256 (1984). "This doctrine prevents a party from asserting the invalidity of a contract where the other party has acted in conformity with the contract and thus placed himself in a position where it would be intolerable in equity to deny its enforcement." Stevenson v. Parker, 25 Wn. App. 639, 643-44, 608 P.2d 1263 (1980); Miller, 78 Wn.2d at 827.

Washington courts may grant relief under the doctrine of part performance in order to give effect to the legislative intent of the statue of frauds. See Losh, 155 Wn. App. at 465. The purpose of the statute of frauds is "the prevention of fraud arising from uncertainty inherent in oral contractual undertakings. Where no uncertainty exists in the oral agreement, the reason for the statute's application similarly disappears." Miller, 78 Wn.2d at 829.

Typically, we consider three factors in determining whether, in the absence of a valid writing, a contract existed and its terms are as claimed: "(1) delivery and assumption of actual and exclusive possession; (2) payment or tender of consideration; and (3) the making of permanent, substantial, and valuable improvements, referable to the contract." Losh, 155 Wn. App. at 465-66; see also Pardee v. Jolly, 163 Wn.2d 558, 568, 182 P.3d 967 (2008); Miller, 78 Wn.2d at 826. The record in this case contains at least some evidence of each of these factors. First, after the Amendment was signed in 2009 the Members and/or NWREA continued to possess and occupy the property for over three

years. Second, after signing the Amendment the Members and/or NWREA rendered payments to Seawest, which they purportedly believed to be "owed under the Lease" and paid in "good faith." CP at 436. Third, it appears that the Lease called for permanent and valuable improvements to be made to the property and that such terms were incorporated in the Amendment.

Additionally, based on George Charles' October 4, 2010 e-mail, in which he repeatedly refers to NWREA and Seawest's rights and obligations under "the Lease," it is evident that while in possession of the property, the Members and NWREA actually treated the Lease as the measure of the parties' rights. "This long acquiescence, in itself, has been held to be a sufficient waiver of the right to avoid a lease for lack of an acknowledgment." Stevenson, 25 Wn. App. at 644; see also Gattavara v. Cascade Petroleum Co., 27 Wn.2d 263, 265-66, 177 P.2d 894 (1947); Metropolitan Bldg. Co. v. Curtis Studio of Seattle, 138 Wash. 381, 386-87, 244 P. 680 (1926).

Because the conduct of the parties in this case raises issues of fact about whether the parties reached a new agreement, memorialized by the Amendment, and whether that agreement is enforceable under the doctrine of part performance, summary judgment was improperly granted.

### Attorney Fees

Given our disposition of this case, we reverse the trial court's award of attorney fees to the Members. Seawest's requests attorney fees and costs on appeal under RAP 18.1, and the prevailing party provision of the Lease is denied as premature because neither party has yet prevailed on the merits. Landis &

Landis Const., LLC v. Nation, 171 Wn. App. 157, 168, 286 P.3d 979 (2012) review denied, 177 Wn.2d 1003 (2013).

Reversed and remanded.

WE CONCUR:

Spec̄men, A.C.J.

Appelwick, J

Cox, J.