
# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| SPUR GROWTH TRUST; MARK J. SHULER and MAURI MOORE SHULER, husband and wife; and MATTHEW N. PONTIOUS, | ) ) ) ) ) | No. 75965-5-I |
| Appellants, | ) ) | DIVISION ONE |
| v. | ) ) ) | UNPUBLISHED OPINION |
| CCOS LAKE UNION BOAT CENTER, LLC, a Washington limited liability company; and COLLEGE CLUB OF SEATTLE, a Washington nonprofit organization, | ) ) ) ) ) ) ) | |
| Respondents. | ) ) | FILED: January 16, 2018 |

APPELWICK, J. — Spur sought to quiet title in parking spaces allegedly conveyed by the previous owner of CCOS's property. The conveyances did not satisfy the statute of frauds. But, Spur argues that the conveyances nevertheless granted an easement under the doctrine of part performance. The trial court granted CCOS's motion for summary judgment. We affirm.

## FACTS

Allison Marina LLC owned slips one, two, three, and five, at a marina on Lake Union. It also owned nineteen parking spaces located at another nearby condominium, Tramonti at Lake Union. Allison slip one and Tramonti were owned by the same individual, Rome Ventura, the founder of Lake Union Crew. Ventura was the sole member of Allison Marina.

No. 75965-5-I/ 2

In 2005, Allison sold slip two to Greg Bauman, who subsequently sold his interest to the Spur Growth Trust.[1] In 2006, Allison sold slip three to Matthew Pontious. In 2007, Allison sold slip five to Mark and Mauri Shuler. Each of the deeds used in these sales contained an addendum that granted use of a parking space. None of the addendums used the term easement, and none defined the nature of the purchasers' interest in those parking spaces.

In 2013, in anticipation of Ventura/Allison selling slip one, the owners of all six slips, including Ventura, entered into an agreement regarding parking. That agreement stated that

> the following matters are hereby clarified for all owners, present and future:
>
> - The existing right of Slips #2 through #6 to park vehicles in the garage spaces at 2920 Eastlake Ave East is reserved and limited to the following allocation:
>
>   - Slip #2, Parking Stall #36
>   - Slip #3, Parking Stall #35
>   - Slip #4, Parking Stall #8
>   - Slip #5, Parking Stalls #9 and #33
>   - Slip #6, Parking Stall #10

This document was not in deed form. Spur[2] concedes that this agreement was never recorded. Ventura then sold her interest in slip 1 and the nineteen Tramonti parking spaces, to CCOS Lake Union Boat Center LLC. Ventura also provided CCOS with a copy of the 2013 parking agreement prior to that sale.

---

[1] Russ and Jill Mann are trustees of the Spur Growth Trust, a Washington revocable trust.

[2] We refer to Spur, the Shulers, and Pontious collectively as "Spur."

2

CCOS refused to honor the other slip owners' claim to parking spaces. Spur filed a complaint to quiet title. The trial court granted summary judgment to CCOS, and quieted title in its favor. Spur appeals.

## DISCUSSION

Spur's sole argument is that the trial court erred in granting summary judgment to CCOS. Spur concedes that the parking conveyances fail the rules set for in the statute of frauds. RCW 64.04.010, .020. But, it argues that a rational trier of fact could have found that the doctrine of part performance applies, and therefore violation of the statute of frauds is not fatal.

When reviewing a summary judgment order, this court engages in the same inquiry as the trial court. Hertog v. City of Seattle, 138 Wn.2d 265, 275, 979 P.2d 400 (1999). Summary judgment is proper when there are no genuine issues of material fact, and the moving party is entitled to judgment as a matter of law. Id. All facts and reasonable inferences are considered in the light most favorable to the nonmoving party. Id. Questions of law are reviewed de novo. Id.

Under the doctrine of part performance, an agreement not in compliance with the statute of frauds may be specifically enforced if there is sufficient part performance of the agreement. Berg v. Ting, 125 Wn.2d 544, 556, 886 P.2d 564 (1995). The doctrine of part performance is an equitable doctrine that provides the remedies of damages or specific performance for agreements that would otherwise be barred by the statute of frauds. DewBerry v. George, 115 Wn. App. 351, 361, 62 P.3d 525 (2003).

To satisfy the doctrine of part performance, there must be clear and unequivocal evidence that leaves no doubt as to the terms, character, or existence of the contract. Miller v. McCamish, 78 Wn.2d 821, 829, 479 P.2d 919 (1971); Losh Family, LLC v. Kertsman, 155 Wn. App. 458, 465, 228 P.3d 793 (2010). We then look to three factors to be certain the contract existed and to determine its terms: (1) delivery and assumption of actual and exclusive possession; (2) payment or tender of consideration; and (3) the making of permanent, substantial and valuable improvements, referable to the contract. Berg, 125 Wn.2d at 556. These three factors serve as an evidentiary function to allow the court to be certain the contract existed and its terms. Losh, 155 Wn. App. at 465-66.

Spur cites Kirk v. Tomulty, 66 Wn. App. 231, 831 P.2d 792 (1992) in arguing that the conveyance here created an easement. In Kirk, we reasoned that, when there is any ambiguity as to the existence of an easement, we look to the construction of pertinent language, the circumstances of the transaction and parties, the subject matter, and the subsequent acts of the parties involved. Id. at 238. The easement in that case explicitly provided for easements—the deed conveyed "a sixty foot easement" and "a thirty foot easement." Id. at 233. We ultimately found that the easement was valid under part performance. Id. at 238. One commentator has observed that the Kirk holding is the only instance where a Washington court has clearly applied the doctrine of part performance to create an easement. 17 WILLIAM B. STOEBUCK, WASHINGTON PRACTICE: REAL ESTATE: PROPERTY LAW § 2.8 (2004).

4

And, the situation here is distinguishable from Kirk, because none of the deeds at issue here refer to a parking easement. The Bauman conveyance included "the use of 1 Lake Union Crew parking stall, #26, at 2920 Eastlake Ave E., on a 24/7 Basis [sic]. . . . Parking space usage to be transferred with future sale of slip #2." This purports to only a future transfer of usage rights to a parking space. Even viewed in the light most favorable to Spur, at most, this arguably conveyed a license interest. No rational trier of fact would find this clear and unequivocal as to the terms and character of the agreement constituting an easement.

The Pontious conveyance included "a parking space at the Tramonti at Lake Union, access to one of the spaces indicated by 'Lake Union Crew.'" This did not even identify the particular parking space that Pontious received. And, like the Bauman conveyance, it does not in any way identify the nature of the interest conveyed as an easement.

The Shuler conveyance stated: "IT IS AGREED BETWEEN THE BUYER AND SELLER AS FOLLOWS: . . . 2 parking places in Tramonti @ Lake Union, as available in Lake Union Crew spots on Level I-commercial parking." This, too, does not identify any conveyance of a particular parking space. It does not identify the nature of the interest being conveyed as an easement to one or any one of the parking spaces in the lot. And, the parking access is only "as available," which suggests that the use of the parking space was merely permissive.

5

The subsequent "clarifying" parking agreement does not change this interpretation. The parking agreement speaks in terms of an "existing right" of slips 2 through 6 to park cars. But, like the deeds, it does not refer to an easement. Nor does it use any other language that suggests an irrevocable permanent property interest in favor of the slip owners. Even viewed in the light most favorable to Spur, it does not make the existence of an easement clear and unequivocal.

Spur also argues that granting summary judgment on this ground usurps the role of the trier of fact, who is better positioned to determine credibility of evidence and whether it is clear and unequivocal.[3] But, courts need not defer to the trier of fact when reasonable minds would not disagree. Owen v. Burlington N. & Sante Fe R.R., 153 Wn.2d 780, 788, 108 P.3d 1220 (2005). And, here, reasonable minds would not disagree on whether the circumstances amount to a clear and unequivocal conveyance of an easement. The deeds do not in any way describe the nature of the interest conveyed. Two of the three deeds do not even identify which parking spaces were conveyed. One of the deeds stated that use of the parking space was merely "as available." No reasonable person would find a clear and unequivocal conveyance of an easement. This is not enough to create

---

[3] On this point, Spur relies heavily on Berg, and describes it as a "landmark" case. It provides multiple quotes from a concurring/dissenting opinion, and states that "the appellate court ruled that neither party won summary judgment and the case was remanded for trial." But, the Supreme Court's majority opinion in Berg affirmed summary judgment, and held that "the doctrine of part performance does not apply in this case to take the grant of easement out of the statute of frauds. We reinstate summary judgment." 125 Wn.2d at 563.

a question for the trier of fact. The trial court did not usurp the role of the trier of fact. Summary judgment was proper.

We affirm.

WE CONCUR: